## VOGEL v. UNITED STATES.
### No. 726.

District Court, D. Massachusetts.
Nov. 28, 1941.

George S. Fuller and Bingham, Dana & Gould, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Lyle M. Turner, Sp. Assts. to the Atty. Gen., for defendant.

FORD, District Judge.

This is an action against the United States to recover alleged overpaid federal

gift taxes for the years 1935, 1936, and 1937.

On August 3, 1935, the plaintiff transferred to herself and her husband as trustees property having, at the time of transfer, a market value of $117,159.24 in accordance with the provisions of a deed of trust, of which the relevant portions follow:

"Article Second: Until a child of mine attains the age of thirty-five years or dies under that age leaving issue, the Trustees shall from time to time pay over at least as often as quarterly the net income of the Trust Fund to my children then living, in equal shares, the Trustees to have the right, in their sole discretion, to apply any child's share of such income for the use and benefit of such child while he is a minor.

"Article Third: Upon the attainment of the age of thirty-five years by any child of mine, or the death under that age of any such child leaving issue, the Trustees shall divide the Trust Fund into that number of equal shares necessary to make the following disposition thereof:

"(a) The Trustees shall pay over one such share to the child so attaining said age, or to the issue, in equal shares, of the child so dying.

"(b) The Trustees shall hold and dispose of one such share for the benefit of each child of mine then living and under the age of thirty-five years, as follows:

"(1) The Trustees shall pay over the net income of such share at least as often as quarterly to the child for whom the same is held, until such child attains the age of thirty-five years or dies under that age, the Trustees to have the right in their sole discretion to apply any child's share of the income for the use and benefit of such child while he or she is a minor.

"(2) Upon the attainment of said age by such child, the Trustees shall pay over such share, together with all accumulated income thereon, to such child.

"(3) If said child dies under said age, the Trustees shall pay over such share, together with all accumulated income thereon, to the issue of such child, in equal shares; and in default of such issue, to my issue then living, in equal shares by right of representation, except that any share which would be so payable to any child of mine under the age of thirty-five years shall, instead of being paid to him or her outright, be added to the share then being held for his or her benefit hereunder, or, in default of any issue of mine, to my husband, if he is then living, or, if he is not then living, to the persons to whom and in the proportions in which the same would have been distributable if I had then died intestate domiciled in Massachusetts and owning such property absolutely.

"Article Fourth: All trusts under this instrument shall in any event terminate at the expiration of twenty years and eleven months after the death of the last survivor of myself and my said husband and my now living children, at which time each share held hereunder, and all accumulated income thereon, shall forthwith be paid over outright to the person then entitled to the income therefrom, except that in case such last survivor is one of my now living children, his or her share shall be paid over in equal shares to his or her issue then living, if any, otherwise it shall be paid over in equal shares by right of representation to my issue then living, free of trust."

"Article Eleventh: I hereby give the right to my husband, William D. Vogel, and after his death to said Charles P. Vogel, to alter or amend this instrument in whole or in part, at any time or times and to change the beneficiaries or their shares hereunder, provided, however, that under no condition may he so amend the Trust

"(1) so as to entitle me to any of the income from the Trust Fund or to any of the principal; nor

"(2) so long as any issue of mine are alive, so as to make anyone a beneficiary hereunder other than my issue.

"I shall have no power, either alone or in conjunction with any person, to amend or revoke this Trust.

"In the event of termination of this Trust by the said William D. Vogel or the said Charles P. Vogel, as above provided, the principal and any undistributed income of the Trust Fund shall be distributed in accordance with the written instructions of the party so terminating delivered to the then Trustees of this Trust, provided, however, that no part of said principal or undistributed income shall be distributed to me or upon my order, or to any Trust for my benefit."

On December 22, 1936, the plaintiff transferred to the trustees cash and se-

curities amounting in the aggregate, at their market value at the time of transfer, to $20,000. On October 18, 1937, the plaintiff transferred to the trustees the sum of $20,000 in cash.

The names and dates of birth of the plaintiff's children are as follows:

Grace Dickerman Vogel — January 9, 1932
Virginia Kingwood Vogel — April 1, 1933
Ralph Booth Vogel — April 1, 1933
Frederick Vogel III — August 7, 1935.

These four children are still living and the plaintiff has had no children since Frederick Vogel III.

The Commissioner of Internal Revenue allowed one exclusion for each of the years 1935, 1936, and 1937. This was done on the now erroneous theory that the trust was the donee of the gift and not the beneficiaries under the trust. Cf. Helvering v. Hutchings, 312 U.S. 393, 395, 61 S.Ct, 653, 85 L.Ed. 909. The taxpayer is timely suing, after claims for refund were denied, to recover the amount of tax and interest which is represented by the disallowance of three additional exclusions of $5,000 each for the above-named years.

The government now resists on the following two grounds: (1) the gifts were of future interests in property and (2) the value of the gift to any donee is not ascertainable for purposes of exclusion. (The exclusions already allowed are not now recoverable by the government by reason of the statute of limitations).

Section 504 (b) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int. Rev.Acts, page 585, is the applicable provision of the statutes and reads as follows:

"Sec. [§] 504. Net Gifts.

\*　　\*　　\*　　\*　　\*

"(b) Gifts Less than $5,000. In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year."

■ It is a well settled rule of law that a taxpayer who claims exemption from taxation must show the exemption is clearly granted. Phoenix Fire & Marine Ins. Co. v. State of Tennessee, 161 U.S. 174, 16 S.Ct. 471, 40 L.Ed. 660.

Assuming the argument of the plaintiff to the effect that the interests of her four children in the trust are present interests and not future beneficial interests, as the government contends, yet I believe the government is correct in its contention that the value of the gifts to any one of the donees was not ascertainable as of the date they were made and for this reason not excludible.

Reasonably definite ascertainableness of the value of what is to be deducted has been recognized as a prerequisite to secure exemption of charitable gifts in computing an estate tax. In Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667, the court refused to allow deduction for charitable gifts by reason of the fact that their value could not be determined at the date of the testator's death. Cf. Gammons v. Hassett, 1 Cir., 121 F.2d 229 and Davison v. Commissioner, 2 Cir., 81 F.2d 16.

■ I believe the principle of reasonably definite ascertainableness as laid down in the Humes case with reference to the exclusion of charitable bequests in determining a net estate is equally applicable to the exclusion of "Gifts Less than $5,000" (§ 504(b), supra) in computing net gifts. In other words, if the value of the gift to a given donee cannot be determined with practical certainty, the exclusion cannot be allowed.

■ It was this difficulty of determining value that induced Congress to deny an exclusion in the case of future interests under Section 504(b), (Senate Reports No. 665, 72nd Congress, First Session—Congressional Record, Vol. 75, Pt. 9, p. 10,096). Also, Congress in providing for the determination of the net amount of gifts to be taxed did not intend that a deduction should be made for a gift whose exact value could not be definitely ascertained, or, to put it another way, for gifts of a speculative character. Gifts to certain beneficiaries, indeterminate in value, are equivalent to gifts to unascertainable donees and clearly the exclusion would not be applied to the latter. (Senate Reports No. 665, supra).

An authority for this view is the case of Helvering v. Blair, 2 Cir., 121 F.2d 945. Here two trusts were created by the taxpayer, who made gifts of more than $250,000 to each. In the first trust, the trustees were directed to apply the income "to the use of any one or more of the following (the testator's wife and seven children) who may be living" and to "the lawful issue of any of my said children, in

such proportions as shall * * * seem proper to the Trustees in their absolute discretion" and upon his wife's death the income was to be applied, without discretionary power "to the use of the then living lawful issue" in equal shares per stirpes. The second trust gave the trustees power to apply the income "to the use of any one or more of the following (seven children) who may be living at the time and the lawful issue of any of my said children, in such proportions as shall * * * seem proper to my Trustees in their absolute discretion." After the named trustees had ceased to act, the income was to go to the "living lawful issue" of the grantor per stirpes for the duration of the trust. The taxpayer argued that in the absence of other showing, it might be assumed that the trustees would originally divide the income of the trusts equally, and that therefore the gifts created equitable life interests in the wife and children which were not "future" within 504(b), and that the value of the gifts could be computed by mortality tables from the life expectancy of the beneficiary. The court rejected the argument, and held that no exclusion could be allowed. It said (at pages 947 and 948 of 121 F.2d), "The difficulty with this reasoning is that it ignores the continued power of the trustees to change the original division, during the wife's life in the case of the first trust; and during the trusteeship of Montgomery and William D. in the case of the second. It was the prime purpose of the trusts that the trustees should have this power, and presumably that they should exercise it. How then is it possible to compute the value of any beneficiary's share at the time of the original division? The allocation might be changed the next day, and the interest which succeeded the interest first awarded would be a 'future interest' within § 504(b). In order to calculate the value of an interest subject to such a condition, we should have to have some actuarial basis for the probability that trustees who had once made such a division would not disturb it. Obviously nothing of the kind is available or would in all likelihood be a sound basis for inference if it was compiled. * * * Congress very deliberately intended to avoid such speculations as would necessarily be involved in any attempt to appraise interests of this kind. That was avowedly its purpose as to 'future interests' and the first interests here at bar exemplify the difficulty quite as much as they."

I think that the reasoning of that case is applicable to the case at bar. Article 11 of the trust instrument here involved provides that the trustees shall have power "to alter or amend this instrument in whole or in part, at any time or times and to change the beneficiaries or their shares hereunder" except that they might not make the donor a beneficiary, or, during the life of any of the issue of the donor, make any one other than the donor's issue a beneficiary. By the exercise of this power the allocation made by Articles 2 and 3 of the trust instrument could be changed at any time. The interest to which any beneficiary was entitled after such a change would be a future interest, as the court points out in the Blair case.

It is true that there is a distinction between this case and the Blair case. Here there is a vested right to receive income subject to its being divested by an exercise of the trustees' power to amend. In the Blair case the right to receive income was subject to the exercise of the trustees' affirmative discretion. But the distinction is one of form merely. The substantive rights of the beneficiaries are no greater under this trust than under the one in the Blair case. The exercise of a power by the trustees can so effectively destroy the present interest that has been created for them that no ascertainable value for the latter can be found. Cf. Commissioner v. Brandegee, 1 Cir., October 30, 1941, 123 F.2d 58. It cannot be said the value of the gifts here to the beneficiaries is definitely ascertainable at the time of their making.

It is my conclusion as a matter of law that, in view of the provisions of the trust, the value of the gifts to no one of the donees was ascertainable as of the date they were made, and, consequently, the taxpayer is not entitled to any exclusion on account of the gifts to her four children.

Judgment for the defendant with costs.