In the Matter of the PROTEST OF FIRST FEDERAL SAVINGS AND LOAN AS-SOCIATION OF CLAREMORE, Oklahoma To the Proposed Assessment of Additional Income Tax Issued December 7, 1982, Appellant.

In the Matter of the PROTEST OF GREAT PLAINS FEDERAL SAVINGS AND LOAN ASSOCIATION, (formerly Custer County Federal Savings and Loan Association) of Weatherford, Oklahoma, to the Proposed Assessment of Additional Income Tax Issued January 14, 1983, Appellant,

v.

OKLAHOMA TAX COMMISSION, Appellee.

Nos. 64673, 64674.

Supreme Court of Oklahoma.

May 26, 1987.

As Modified Oct. 6, 1987.

Rehearing Denied Oct. 7, 1987.

Dee A. Replogle, Jr., Robert H. Gilliland, Jr., Richard D. Craig, McAfee & Taft, Oklahoma City, for appellants.

J. Lawrence Blankenship, Donna E. Cox, Christy J. Caesar, Oklahoma City, Marjorie L. Welch, Norman, Oklahoma Tax Com'n, for appellee.

KAUGER, Justice.

The issue presented is whether certain corporate income earned by Oklahoma savings and loan associations is exempt from taxation by the state of Oklahoma. The income in question includes the interest earned on 1) overnight/demand deposits [1] placed in the Federal Home Loan Bank, 2) prepaid insurance premiums [2] credited to the secondary reserve Federal Savings and Loan Insurance Corporation (FSLIC), 3) and bonds [3] issued by the Federal National Mortgage Association (FNMA) and the Federal Home Loan Mortgage Corporation (FHLMC). We find that the FHLMC bonds are exempt from taxation, but that the interest on the overnight/demand deposits, the bonds issued by FNMA, and the interest credited to the secondary reserve are taxable.

After office audits of the appellants, First Federal Savings and Loan Association of Claremore and Great Plains Federal Savings and Loan Association of Weatherford, the Oklahoma Tax Commission (OTC) issued its proposed assessment of additional income tax, penalties, and interest. The appellant savings and loan associations filed timely protests pursuant to 68 O.S. 1981 § 221.[4] However, because the parties stipulated to the facts, no formal hearing was conducted.

The contention of the protesting savings and loan associations before the Oklahoma

---

**1.** Demand deposits are funds accepted by a bank which are subject to immediate withdrawal. *United States v. Philadelphia National Bank,* 201 F.Supp. 348, 360 (E.D.Penn.1962).

**2.** Prior to 1973, when an institution had a two per centum net increase in all accounts, it was required to make an additional premium payment in the nature of a prepayment for future premiums. *Commissioner v. Lincoln Savings & Loan Asso.,* 403 U.S. 345, 345–46, 91 S.Ct. 1893, 1895, 29 L.Ed.2d 519, 522 (1971).

**3.** Bonds are obligations payable at a definite time, running through a series of years. *Shelley v. St. Charles County Court,* 21 F. 699, 701 (E.D. Mo.1884).

**4.** Title 68 O.S.1981 § 221 provides in pertinent part:

"... (c) Within thirty (30) days after the mailing of the aforesaid proposed assessment, the taxpayer may file with the Tax Commission a written protest under oath, signed by himself or his duly-authorized agent, setting out therein:

(1) A statement of the amount of deficiency as determined by the Tax Commission, the nature of the tax and the amount thereof in controversy;

(2) A clear and concise assignment of each error alleged to have been committed by the Tax Commission;

(3) The argument and legal authority upon which each assignment of error is made; provided, that the applicant shall not be bound or restricted in such hearing, or on appeal, to the arguments and legal authorities contained and cited in said application;

(4) A statement of relief sought by the taxpayer; and

(5) A verification by the taxpayer or his duly authorized agent that the statements and facts contained therein are true ..."

Tax Commission was that the income subjected to taxation was either earned on federal obligations or that it was exempt from taxation by controlling federal statutes. After considering this argument, the Oklahoma Tax Commission on May 30, 1985, denied the protests, finding that the income earned on the overnight/demand deposits, the fed-funded transactions in the Federal Home Loan Bank (FHLB),[5] the prepaid premiums to the Federal Savings and Loan Insurance Corporation (FSLIC), the bonds issued by the Federal National Mortgage Association (FNMA), and the Federal Home Loan Mortgage Corporation (FHLMC) were not federal obligations pursuant to 12 U.S.C. §§ 1433, 1725.[6] The OTC concluded that all the income from these sources was subject to state taxation under 12 U.S.C. 1464(h).[7] The savings and loans appealed the Commission's findings except its finding that the income earned on the fed-funded transactions was taxable.

## HISTORY OF THE STATE TAXATION OF FINANCIAL INSTITUTIONS

The first significant controversy involving taxation of banks arose in *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 4 L.Ed. 579 (1819) when the state of Maryland attempted to tax bank notes issued by the Second Bank of the United States. The United States Supreme Court held that the bank was an instrumentality of the federal government,[8] that taxation of the banks operation would substantially burden governmental activities,[9] that the bank was a necessary and proper incident of the congressional power to lay and collect taxes and to borrow money, that the tax violated the supremacy clause of the United States Constitution,[10] and that the supremacy

5. Federal funds represent member bank deposits at a Federal Reserve Bank. Trading federal funds refers to the sale or the purchase of these deposit balances at rates of interest set by the parties to the trade. Most banks participate in the funds market as either buyers or sellers to maintain their legal reserves at required levels. W. Baughn and C. Walker, *The Bankers' Handbook*, Ch. 37, p. 470–71 (Dow Jones-Irwin 1978).

6. The tax exemption statute, 12 U.S.C. § 1433 (1957) provides:

 "Any and all notes, debentures, bonds, and other such obligations issued by any bank, and consolidated Federal Home Loan Bank bonds and debentures, shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority. The bank, including its franchise, its capital, reserves, and surplus, its advances, and its income, shall be exempt from all taxation now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that in any real property of the bank shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed. The notes, debentures, and bonds issued by any bank, with unearned coupons attached, shall be accepted at par by such bank in payment of or as a credit against the obligation of any homeowner debtor of such bank."
 Title 12 U.S.C. § 1725 (1980) provides in pertinent part:

 "(e) All notes, bonds, debentures, or other such obligations issued by the Corporation shall be exempt, both as to principal and interest, from all taxation (except surtaxes, estate, inheritance and gift taxes) now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority. The Corporation, including its franchise, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that any real property of the Corporation shall be subject to state, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed...."

7. Title 12 U.S.C. § 1464(h) (1980) provides:

 "(h) No State, county, municipal, or local taxing authority shall impose any tax on such associations or their franchise, capital, reserves, surplus, loans, or income greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions."

8. See also *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 859–60, 6 L.Ed. 204 (1824).

9. Symons, "State Taxation of Banks: Federal Limitations", 99 Banking L.J. 817, 821 (1982).

10. The supremacy clause, U.S. Const. art. VI, cl. 2, provides:

clause vested Congress with the ability to override state laws in conflict with the exercise of constitutionally delegated congressional powers.

In 1819, the federal reserve system was non-existent, it was uncertain whether the federal government could issue money,[11] and the Second Bank played a major role in the federal government's fiscal and monetary affairs. Nevertheless, the Court recognized that the general power of taxation by the states extends to certain aspects of federal instrumentalities: [12]

> "This opinion does not deprive the States of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the State, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the state. But this (tax on note issuance) is a tax on the operations of the bank, and is, consequently, a tax on the operations of an instrument employed by the government of the Union to carry its powers into execution."

The Borrowing[13] and Supremacy clauses of the Constitution do not prohibit the states from taxing personal property representing an interest in a federal instrumentality as long as the property interest is not taxed in a discriminatory manner when compared to similar investment property. This balancing of state and federal powers was the reason for the subsequent enactment of 12 U.S.C. § 548 in 1864, which allowed a bank share tax on national bank stock held in the hands of individuals to be taxed. Even so, the tax could not be levied at a greater rate than that applied to state-chartered banks or other moneyed capital.[14]

In recent years, it has been recognized by Congress that national banks are no longer significant federal instrumentalities, and that general taxation of their activities has little effect on the operation of the federal government's fiscal and monetary affairs.[15] Congress amended § 548[16] in 1969, to permit the general taxation of national banks—limited only by the nondiscrimination requirement relative to state-chartered banks, and possible constitutional requirements under the supremacy and borrowing clauses. The Federal Home Loan Bank Board was established in 1932

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

11. *Julliard v. Greenman,* 110 U.S. 421, 445, 4 S.Ct. 122, 128, 28 L.Ed. 204 (1884); *Legal Tender Cases,* 79 U.S. (12 Wall) 457, 547, 20 L.Ed. 894 (1870).

12. *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 436–37, 4 L.Ed. 579 (1819).

13. The U.S. Const. art. I, § 8, cl. 1–2 provides: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;
To borrow Money on the credit of the United States;"

14. Symons, "State Taxation of Banks: Federal Limitations", supra, see note 9. See generally, Cohen, "Federalism in Equality Clothing: A Comment on *Metropolitan Life Insurance Company v. Ward,*" 38 Stanford L.Rev. 1 (1985). Moneyed capital is money invested in private banking, investments of individuals in securities that represent money at interest and other evidences of indebtedness that are normal in the business of banking. *Comanche County v. American National Bank,* 122 Okl. 34, 252 P. 408, 410 (1926).

15. S.Rep. No. 530, 91st Cong. 1st Sess., reprinted in 1969 U.S.Code Cong & Ad News 1594–95.

16. State taxation is provided in 12 U.S.C. § 548 (1969):
"For the purposes of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located."

by the Federal Home Loan Bank Act.[17] In 1933, the Board was authorized to charter and supervise federal savings and loan associations, local mutual thrift institutions in which people could invest funds to provide financing for homes.[18]

The protestants argue, and correctly so, that the "borrowing clause" of the United States Constitution [19] as well as 31 U.S.C. § 3124,[20] prohibit the state from directly taxing interest on federal obligations. However, the question posed here is whether the assets subjected to taxation qualify for an exemption from state tax under either specific statutory or general constitutional principles.

Title 12 U.S.C. § 1464(h) [21] allows states to tax federal savings and loan associations, their franchises, reserves, surplus, loans, and income if the taxation is not greater than that imposed on similar local mutual or cooperative thrift and home financing institutions. In *Sooner Federal Savings and Loan Assoc. v. Oklahoma Tax Commission*, 662 P.2d 1366, 1369 (Okla.1982) *app. dism'd* April 18, 1983, 460 U.S. 1075, 103 S.Ct. 1760, 76 L.Ed.2d 337, this Court, after reviewing § 1464(h) and the case law emanating therefrom, held that the statute supported non-discriminatory state taxation of *all* the income of federal savings and loans.

## I

## THE INTEREST EARNED ON FHLMC BONDS IS EXEMPT FROM TAXATION.

■ The FHLMC issued bonds pursuant to 12 U.S.C. § 1455,[22] which provides that

17. See 12 U.S.C. § 1421 et seq. (1932).

18. See 12 U.S.C. § 1464 (1980). The section was amended in 1984 with this purpose unchanged.

19. U.S. Const. art. I, § 8, cl. 1–2, see note 13, supra.

20. Exemption from taxation, 31 U.S.C. § 3124 (1982) provides:
"(a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—
(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
(2) an estate or inheritance tax
(b) The tax status of interest on obligations and dividends, earnings, or other income from evidence of ownership issued by the Government or an agency and the tax treatment of gain and loss from the disposition of those obligations and evidences of ownership is decided under the Internal Revenue Code of 1954 (26 U.S.C. 1 et seq.). An obligation that the Federal Housing Administration has agreed, under a contract made before March 1, 1941, to issue at a future date, has the tax exemption privileges provided by the authorizing law at the time of the contract. This subsection does not apply to obligations and evidences of ownership issued by the District of Columbia, a territory or possession of the United States, or a department, agency, instrumentality, or political subdivision of the District, territory, or possession."

21. Title 12 U.S.C. § 1464(h) (1980), see note 7, supra.

22. The issuance of bonds, 12 U.S.C. § 1455 (1979), provides in part:
"The Corporation is authorized, upon such terms and conditions as it may prescribe, to borrow, to give security, to pay interest or other return, and to issue notes, debentures, bonds, or other obligations, or other securities, including without limitation mortgage-backed securities guaranteed by the Government National Mortgage Association in the manner provided in section 1721(g) of this title. Any obligation or security of the Corporation shall be valid and binding notwithstanding that a person or persons purporting to have executed or attested the same may have died, become under disability, or ceased to hold office or employment before the issuance thereof....
(1) Any person, trust, or organization created pursuant to or existing under the laws of the United States or any State shall be authorized to purchase, hold, and invest in mortgages, obligations, or other securities which are or have been sold by the Corporation pursuant to this section or pursuant to section 1454 of this title to the same extent that such person, trust, or organization is authorized under any applicable law to purchase, hold, or invest in obligations issued by or guaranteed as to principal and interest by the United States or any agency or instrumentality thereof. Where State law limits the purchase, holding, or investment in obligations issued by the United States by such a person, trust, or organization, such Corporation mortgages, obligations, and other securities shall be considered to be obligations issued by the United States for purposes of the limitation. ..."

if the purchase of the bonds is limited by state law, they shall be considered to be an obligation of the United States for purposes of the limitation. Oklahoma does limit the investment in FHLMC stock to 5% of the savings and loan associations assets.[23] The bonds are considered obligations of the United States and any interest thereon also would be exempt from taxation.

## II

### INTEREST RECEIVED FROM THE OVERNIGHT/DEMAND DEPOSITS IS NOT EXEMPT FROM TAXATION

The protestants contend that the overnight/demand deposits are actually loans to the FHLB thereby constituting obligations under 31 U.S.C. § 3124[24] and 12 U.S.C. § 1433. The pertinent portion of § 1433 provides:

"Any and all notes, debentures, bonds and other such obligations issued by any bank, and consolidated Federal Home Loan Bank bonds and debentures, shall be exempt both as to principal and interest from all taxation ..."

 The word "obligations" could be interpreted to embrace virtually everything which a bank is bound to pay. We must determine how broadly the "obligations" are to be construed and precisely what income is covered by the exemption. In discerning the scope of the word "obligations," we must bear in mind that the settled rule of construction is that tax exemptions are not to be inferred lightly,[25] nor will exemptions be applied unless they are already granted by statute.[26]

Apparently, by using the term "issued", the obligations referred to in the statute are those which might be issued in the exercise of the borrowing power of the United States.[27] The United States Supreme Court's decision in *Hibernia Savings & Loan Society v. San Francisco,* 200 U.S. 310, 315, 26 S.Ct. 265, 267, 50 L.Ed. 495 (1906), is helpful. In question there was the validity of a tax imposed by the State of California on checks or orders signed by the Treasurer of the United States. Section 3701 of the Revised Statutes (31 U.S.C.A. § 742) provided that "stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under state or municipal or local authority."

In *Hibernia,* the Court noted that the basis of this exemption was that a tax upon the obligations of the United States virtually taxes the credit of the Government; that it impairs its power to raise money for the purpose of carrying on its civil and military operations; and that a tax which dimin-

---

**23.** Investments in securities are limited in 18 O.S.1981 § 381.56 which provides in pertinent part:

"Associations shall have power to invest in securities as follows:

1. In obligations of, or obligations which are fully guaranteed as to principal and interest by, the United States or this state; in stock or obligations of any Federal Home Loan Bank or Banks; in stock or obligations of the Federal Savings and Loan Insurance Corporation; and in stock or obligations of the Federal National Mortgage Association or any successor or successors thereto.

2. In time deposits, certificates, accounts, or other obligations of banks or other financial institutions, the accounts of which are insured by the Federal Deposit Insurance Corporation.

3. Not in excess of five percent (5%) of its assets in bonds, notes or other evidences of indebtedness which are a general obligation of, or guaranteed as to principal and interest by, any agency or instrumentality of the United States not specified in subparagraph 1, or of any city, county or school district in this state...."

This was amended in 1983. Paragraphs one through three remain unchanged.

**24.** See note 20, supra.

**25.** *Heiner v. Colonial Trust Co.,* 275 U.S. 232, 235, 48 S.Ct. 65, 66, 72 L.Ed. 256, 258 (1927); *Power Equipment Co. v. United States,* 748 F.2d 1130, 1137 (6th Cir.1984); *United States Trust Co. of New York v. Anderson,* 65 F.2d 575, 577 (2nd Cir.1933).

**26.** *Denman v. Slayton,* 282 U.S. 514, 519, 51 S.Ct. 269, 75 L.Ed. 500, 502 (1931); *Phoenix Insurance Co. v. Tennessee,* 161 U.S. 173, 177, 16 S.Ct. 471, 472, 40 L.Ed. 660 (1896).

**27.** *Power Equipment Co. v. United States,* see note 25, supra.

ishes, in the slightest degree, the value of the obligations issued by the Government for that purpose impairs *pro tanto* their market value. However, the Court held that although the checks could be considered to be obligations of the United States within the letter of the exemption statute, they were not within its spirit. The court relied on 28 Stat. 278, August 13, 1894, recodified as 31 U.S.C. § 5154 (1983):

> "A State or a territory or possession of the United States may tax United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) as money on hand or on deposit in the same way and at the same rate that the State, territory, or possession taxes other forms of money. This section does not affect a law taxing national banks."

"Obligations" as used in an exemption clause when construed with the general purposes of the exemption may not necessarily be all-embracing.[28] The fact that in *Hibernia* the money was deposited in a federal bank and interest was paid to the protestants did not prevent it from becoming a part of the general property of the bank and subject to state taxation.[29] We find that overnight/demand deposits are subject to taxation by the State of Oklahoma.

### III

### THE INTEREST EARNED ON FNMA BONDS IS TAXABLE.

■ The savings and loan associations contend that the bonds issued by FNMA are tax exempt. We do not agree. The FNMA is authorized to issue obligations under 12 U.S.C. § 1719(b).[30] The authorizing statute requires that bonds issued under this section contain language disclaiming that the obligations are not notes or obligations of the United States or any agency other than the issuing corporation. Obviously, the intent of § 1719 is that these bonds are not permanent public debts exempt from taxation.

The savings and loan associations rely on *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 398, 103 S.Ct. 692, 696, 74 L.Ed.2d 562, 568 (1983), in which the United States Supreme Court found that the Tennessee bank tax violated the immunity of obligations of the United States from state and local taxation. The tax was held to be discriminatory in favor of securities issued by Tennessee and its political subdivisions.[31] There, the bonds issued by the Federal Farm Credit Banks did not contain the language "not a debt or obligation of the United States," and the Court found that it was an obligation under 31 U.S.C. § 742 because no distinction had been made between the obligations of the United States Treasury and the obligations of the Federal Credit Banks. Here, § 1719 specifically mandates that the bonds issued by FNMA are not obligations of the United States.

The savings and loan associations assert that the state's imposition of a tax on federal obligations but not on state obligations is discriminatory. This appeal involves the threshold question of whether obligations held by appellants constitute obligations of a federal agency qualifying for exemption from state tax under either specific statutory authority or general constitutional

---

**28.** *United States Trust Co. of New York v. Anderson,* see note 25, supra at p. 579.

**29.** *Hibernia Savings Society v. San Francisco,* 200 U.S. 311, 316, 26 S.Ct. 265, 267, 50 L.Ed. 495 (1906).

**30.** Title 12 U.S.C. § 1719(b) (1980) provides in pertinent part:
"... The corporation shall insert appropriate language in all of its obligations issued under this subsection clearly stating that such obligations, together with the interest thereon was not guaranteed by the United States and do not constitute a note or obligation of the United States or of any agency or instrumentality thereof other than the corporation...."

**31.** *Metropolitan Life Insurance Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985). See also, Cohen, "Federalism in Equality Clothing: A Comment on *Metropolitan Life Insurance Company v. Ward,*" 38 Stanford L.Rev. 1 (1985).

principles—the proper classification of the obligations themselves is an issue on appeal. Even so, the issue of discrimination was not raised in the hearing before the Oklahoma Tax Commission and is not properly preserved on appeal.[32] Nevertheless, because the State of Oklahoma taxes neither federal nor state exempted obligations no discrimination is apparent. Title 68 O.S. Supp.1982 § 2358,[33] specifically provides that income which is exempt under the Federal Constitution, State Constitution, federal laws or laws of Oklahoma is shielded from taxation. Discrimination is not the issue, the question is whether the bonds are federal obligations and as such are exempt. We find that the FNMA bonds were specifically excluded from obligations of the United States and that the interest is taxable.

---

**32.** *State v. Tarpenning,* 204 Okl. 181, 228 P.2d 374, 376 (1951).

**33.** Title 68 O.S.Supp.1982 § 2358, provides in pertinent part:

"... 2. There shall be deducted amounts included in such income that the state is prohibited from taxing because of the provisions of the Federal Constitution, the State Constitution, federal laws or laws of Oklahoma...."

**34.** Title 12 U.S.C. § 1726 (1980) provides in pertinent part:

"(a) It shall be the duty of the Corporation to insure the accounts of all Federal savings and loan associations and Federal mutual savings banks, and it may insure the accounts of building and loan, savings and loan, and homestead associations and cooperative banks organized and operated according to the laws of the State, District, Territory, or possession in which they are chartered or organized...."

This was amended in 1982, the provision relating to savings and loan associations remains unchanged.

**35.** Title 12 U.S.C. § 1727 (1980) provides in pertinent part:

"(a)(1) The Corporation shall establish a primary reserve which shall be the general reserve of the Corporation and a secondary reserve to which shall be credited the amounts of the prepayments made by insured institutions pursuant to former provisions of subsection (d) of this section and the credits made pursuant to the first sentence of subsection (e) of this section....

(b)(1) Each institution whose application for insurance is approved by the Corporation shall pay to the Corporation, in such manner

## IV.

## THE INTEREST RECEIVED FROM THE SECONDARY RESERVES IS TAXABLE

■ The savings and loan associations contend that the interest income earned on the secondary reserve maintained by the FSLIC is not subject to Oklahoma corporate income tax. We disagree. The FSLIC is obligated to insure the accounts of federal savings and loan associations.[34] Insured institutions are charged annual premiums and, at one time, were also required to make contributions to the FSLIC secondary reserve.[35] Since 1973, no prepayments of insurance premiums have been made. The secondary reserve is only available to the FSLIC when losses occur, and then only to the extent other available accounts are insufficient.[36]

Each insured institution has a *pro rata* share in the secondary reserve.[37] It is not

---

as it shall prescribe, a premium for such insurance equal to one-twelfth of 1 per centum of the total amount of all accounts of the insured members of such institution...."

**36.** The provision for crediting the secondary reserve, 12 U.S.C. § 1727(e) (1980), provides:

"(e) The Corporation shall credit to the secondary reserve, as of the close of each calendar year a return on the outstanding balances of the secondary reserve, during such calendar year, as determined by the Corporation, at a rate equal to the average annual rate of return to the Corporation during the year ending at the close of November 30 of such calendar year, as determined by the Corporation, on the investments held by the Corporation in obligations of, or guaranteed as to principal and interest by, the United States. Except as provided in subsections (f) and (g) of this section, the secondary reserve shall be available to the Corporation only for losses of the Corporation and shall be so available only to such extent as other accounts of the Corporation which are available therefor are insufficient for such losses. No right, title, or interest of any institution in or with respect to its pro rata share of the secondary reserve shall be assignable or transferable whether by operation of law or otherwise, except to such extent as the Corporation may provide for transfer of such pro rata share in cases of merger or consolidation, transfer of bulk assets or assumption of liabilities, and similar transactions, as defined by the Corporation for purposes of this sentence."

**37.** *Commissioner v. Lincoln Savings & Loan Assoc.,* 403 U.S. 345, 350, 91 S.Ct. 1893, 1897, 29 L.Ed.2d 519, 529 (1971).

assignable or transferable except under circumstances set by the FSLIC, e.g., approved mergers, consolidations, or similar situations.[38] A separate account is maintained for each insured institution's share of the secondary reserve and a statement issued annually.[39] The FSLIC uses the funds to pay the savings and loan associations insurance premiums under § 1727(g).[40] An insured institution may obtain a cash refund of its *pro rata* share if its status as an insured is terminated or upon receivership or liquidation.[41] In *Commissioner v. Lincoln Savings and Loan Association*, 403 U.S. 345, 356, 91 S.Ct. 1893, 1900, 29 L.Ed. 519, 528 (1971), the Court recognized that each insured institution has a distinct and recognized property interest in the secondary reserve. The Court also noted that savings and loan associations were required under federal and state requirements to show the interest credited by the FSLIC as an asset on its balance sheet and the credit as income. We, therefore, find that the interest is taxable income, not an exempt obligation.

### CONCLUSION

We find that the bonds issued by the Federal Home Loan Mortgage Corporation are exempt from taxation, but that the overnight demand deposits, the bonds issued by the Federal National Mortgage Association, and the interest credited to the FSLIC's secondary reserve are taxable.

AFFIRMED IN PART; REVERSED IN PART.

DOOLIN, C.J., and HODGES, OPALA, KAUGER and SUMMERS, JJ., concur.

LAVENDER and HARGRAVE, JJ., concur in part and dissent in part.

SIMMS, J., concurs in Parts I, II, IV, dissents from Part III.

---

**38.** See 12 U.S.C. § 1727(e) (1980), note 36, supra.

**39.** *Commissioner v. Lincoln Savings & Loan Assoc.*, see note 37, supra.

**40.** The payment of the premium is authorized by 12 U.S.C. § 1727(g) (1980) which provides in pertinent part:
"(g) If, at the close of December 31 in any year after 1971, the aggregate of the primary reserve and the secondary reserve equals or exceeds 1¼ per centum of the total amount of all accounts of insured members of all insured institutions but the primary reserve does not equal or exceed 2 per centum of such base, each insured institution's pro rata share of the secondary reserve shall, during the year beginning with May 1 next succeeding such close, be used, to the extent available, to discharge such institution's obligation for its premium under subsection (b) of this section for the premium year beginning in such year, ..."

**41.** See 12 U.S.C. §§ 1727(f), 1730 (1980).