ANN ALDRICH, District Judge.
In this appeal we must determine whether the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101-1330, repealed by implication the provision of the Social Security Act of 1935, barring the assignment of benefits, 42 U.S.C. § 407. The district court held that the Social Security Administration is subject to bankruptcy court income deduction orders and affirmed a ruling compelling the Administration to ignore section 407 and pay all or some of seven debtors’ social security benefits to a bankruptcy trustee. Consideration of the statutes and legislative history involved, as well as recent relevant Congressional action, requires that we reverse and order the bankruptcy court to dissolve the income deduction orders.
The relevant facts are simple. Seven individuals who receive disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, or supplemental security income benefits under Title XVI, 42 U.S.C. §§ 1381-1383, filed voluntary petitions with the bankruptcy court under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301-1330. In each case, the debtor informed the bankruptcy court that the benefits constituted his or her regular income. Overruling the Administration’s objections, the court ordered the government to send the benefits directly to the trustee. In re Buren, 4 B.R. 109 (Bkrtcy.M.D.Tenn.1980). When the Administration appealed the seven orders, the district court consolidated the cases and affirmed. In re Buren, 6 B.R. 744 (M.D.Tenn.1980).
I. THE BANKRUPTCY REFORM ACT OF 1978
Chapter 13 of the Bankruptcy Code enables an individual to develop a plan under *1082 court supervision for the repayment of debts over an extended period of time. In a Chapter 13 repayment plan, unlike a Chapter 7 liquidation, a debtor may retain his property by agreeing to repay his creditors.
The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property by agreeing to repay his creditors. Chapter 13 also protects a debtor’s credit standing far better than a straight bankruptcy, because he is viewed by the credit industry as a better risk. In addition, it satisfies many debtors’ desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one’s obligations. The benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.
H. R.Rep. No. 95-595, 95th Cong., 1st Sess. 118 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5963, 6079 (“House Report”).
Incorporating recommendations from scholars, legislators and bankruptcy judges who worked under the aegis of the Bankruptcy Commission, the 1978 Code was a comprehensive rewriting of federal bankruptcy law. Its history makes clear that one of Congress’ major goals was to expand the class of debtors eligible to utilize Chapter 13. Under prior law, only a “wage earner” — defined by the old Code as “an individual whose principal income is derived from wages, salary, or commissions”[1] — could proceed under Chapter 13. The new Code extended eligibility to any “individual with regular income,” 11 U.S.C. § 109(e), defined as “[an] individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13 ...” 11 U.S.C. § 101(24). Congressional reports state that the purpose of section 101(24)
... is to expand substantially the kinds of individuals that are eligible for relief under chapter 13, Plans for Individuals with Regular Income, which is now available only for wage earners. The definition encompasses all individuals with incomes that are sufficiently stable and regular to enable them to make payments under a chapter 13 plan. Thus, individuals on welfare, social security, fixed pension incomes, or who live on investment incomes, will be able to work out repayment plans with their creditors rather than being forced into straight bankruptcy. Also, self employed individuals will be eligible to use chapter 13 if they have regular income....
House Report at 311-12, 1978 U.S.Code Cong. & Ad.News at 6269; S.Rep. No. 95-989, 95th Cong.2d Sess. 24 (1978), reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5810 (“Senate Report”).
Consistent with section 101(24), Congress broadened the definition of “property of the estate” to include “all legal or equitable interests of the debtor in property as of the commencement of the case,” 11 U.S.C. § 541(a)(1), and “all property of the kind specified in [§ 541] ... that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted ...” 11 U.S.C. § 1306(aXl). The bankruptcy court was given broad powers to “order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.” 11 U.S.C. § 1325(b).[2]
*1083 Nowhere does the Code state that this definition of estate was meant to repeal section 407. Title III lists ten pages of other federal statutes that the Code repeals or modifies without mentioning section 407, Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2673, 2673-82; 11 U.S.C.A. at pp. 121-32, and the legislative history contains evidence that Congress knew that only an express provision could void the anti-assignment provisions of federal benefit statutes.[3]
Rather, the argument that social security benefits must be paid to the trustee regardless of the language of section 407 rests on a complicated construction of other provisions of the Code. Congress created mandatory and voluntary exemptions from the debtor’s estate of property that would otherwise be included. Section 541(c)(2), for example, provides that the Code does not override the provisions of spendthrift trusts. Sections 522(b)(2)(A) and 522(d)(10) permit debtors to voluntarily omit social security benefits from their estates. Section 522(b)(2)(A) allows them to retain “any property that is exempt under Federal law ...” Section 522(d)(10) states:
The following property may be exempted under subsection (b)(1) of this section: (10) The debtor’s right to receive—
(A) a social security benefit, unemployment compensation, or a local public assistance benefit;
(C) a disability, illness, or unemployment benefit.
Section 407 is mentioned only once in the comments accompanying the two sections. The report on section 522(b)(2)(A) lists ten statutes that provide “items that may be exempted under Federal Laws other than title 11.”[4] One is “Social security payments, 42 U.S.C. § 407 ...” These same deductions were available under the old Code.[5]
*1084 ÍI. ANTI-ASSIGNMENT PROVISIONS OF THE SOCIAL SECURITY ACT
Title II of the Social Security Act of 1935 established a social insurance program for wage earners and their dependents, to be paid out of a trust funded by the payroll taxes of wage earners and their employers. The current Title XVI, the product of the 1972 amendments that consolidated and expanded several previous programs, established a welfare program for needy individuals who are aged, blind, or disabled.
Section 407 is a strong and clear anti-assignment provision that has never been repealed or amended.
The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable, or rights existing under this sub-chapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
The committee reports discussing Title II never mention the anti-assignment provision; as the government concedes, they illuminate the provision only’by reaffirming that the purpose of Title II is to provide a minimum level of security against the economic uncertainties of old age. See H.R. Rep. No. 615, 74th Cong., 1st Sess. (1935); S.Rep. No. 628, 74th Cong., 1st Sess. (1935). Nonetheless, the Supreme Court has stated unequivocally that section 407 “imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to bar all claimants ...” Philpott v. Essex County Welfare Board, 409 U.S. 413, 416, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973) (barring New Jersey welfare agency from imposing lien on welfare recipient’s lump sum retroactive federal disability payments to recover previously advanced state funds).
When Congress amended Title XVI it explicitly incorporated section 407 to protect the beneficiaries of the new and revised programs. 42 U.S.C. § 1383(d)(l). The committee reports that were written when the amendments were proposed in 1971 explained the rationale for the prohibition against assignments:
Your committee wishes to emphasize its strong belief that if the benefits which would be provided under this program are to meet the most basic needs of the poor, the benefits must be protected from seizure in legal processes against the beneficiary. Therefore, any amounts paid or payable under this program would not be subject to levy, garnishment, or other legal process, except the collection of delinquent Federal taxes. Also, entitlement to these benefits would not be transferable or assignable.
H.R.Rep. No. 92-231, 92d Cong., 1st Sess. 156 (1971), reprinted in [1972] U.S.Code Cong. & Ad.News 4989, 5142.
Other provisions of the Social Security Act further limit the payment of benefits to third parties and illustrate strong Congressional opposition to the diversion of social security funds. Title II benefits may be delivered to a third party under two circumstances only. Section 405(j) authorizes the Secretary of Health and Human Services to certify a representative payee “when it appears ... that the interest of an applicant entitled to payment would be served thereby.” And section 406 permits the Secretary to transmit up to twenty-five percent of past-due benefits to an attorney who successfully represented a claimant before the agency. Title XVI also permits payments to representative payee and attorneys, but the Secretary may prescribe maximum attorney fees and may not deduct the fees from past-due benefits. 42 U.S.C. § 1383(d). Congress believed that “to withhold such fees would be contrary to the purpose of the program.” H.R.Rep. No. 92-231 at 156; 1972 U.S.Code Cong. & Ad. News at 5142.
Both provisions espouse a policy much different from the high priority the Bank *1085 ruptcy Code accords attorney fees in the payment of claims against a debtor’s estate. 11 U.S.C. §§ 503(b)(1)(C), (2) and 507(a)(1). Under Title 11, such fees must be paid by the trustee directly to the attorney before or at the time of payment of the claims of other creditors. 11 U.S.C. § 1326. Save for the vague requirement that fees be “reasonable,” 11 U.S.C. § 330(a)(1), an attorney representing a Chapter 13 debtor has a statutory right to have whatever amount he charges “withheld” from the debtor’s estate and paid to him or her.
III. REASONING
Despite the failure of the Bankruptcy Act to include section 407 in its lengthy list of statutes repealed or modified by the new Code and the dearth of legislative history indicating that such an appeal was intended, the district court held that the Code repealed section 407 by implication. The court placed great emphasis on the bankruptcy court’s unquestioned authority to garnish funds from the federal government and the Congressional intent to make Chapter 13 relief available to social security recipients. As a matter of statutory construction, it held that 11 U.S.C. sections 522 and 541 of the Code could not be reconciled with section 407, and that the more recent act was a “specific” statute that overruled the prior, more “general” provisions of section 407. We disagree with these conclusions.
The Supreme Court has held repeatedly that a “cardinal rule” of statutory construction is that repeals by implication are disfavored. Tennessee Valley Authority v. Hill, 437 U.S. 153, 189-90, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978); Radzanower v. Touche Ross & Co., 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); United States v. United Continental Tuna Corporation, 425 U.S. 164, 168, 96 S.Ct. 1319, 1322, 47 L.Ed.2d 653 (1976); Morton v. Mancari, 417 U.S. 535, 549-50, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974).[6] Among the narrow exceptions to this commandment are
two well-settled categories of repeals by implication — (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest....
Radzanower v. Touche Ross & Co., supra, 426 U.S. at 154, 96 S.Ct. at 1993, quoting Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936). Furthermore, the Court has been particularly reluctant to repeal by implication any statute that is not mentioned when a later act lists laws that it repeals or modifies. Blanchette v. Connecticut General Insurance Corps. (Regional Rail Reorganization Cases), 419 U.S. 102, 129, 95 S.Ct. 335, 351, 42 L.Ed.2d 320 (1974); Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 204, 82 S.Ct. 1328, 1333, 8 L.Ed.2d 440 (1962); Laurens Federal Savings and Loan v. South Carolina Tax Commission, 365 U.S. 517, 523, 81 S.Ct. 719, 722, 5 L.Ed.2d 749 (1961).
In deciding that sections 522 and 541 could not be reconciled with section 407, the district court found a repeal by implication of section 407 in Chapter 13 cases to be essential “so that the new Code is not emasculated. The new Code is a statutory scheme, the integrity of which must be preserved. ... [Rjemoval of social security recipients from the purview of Chapter 13 would block one of the main purposes of the 1978 revision.” 6 B.R. at 749. The district *1086 court and appellees contend that a refusal to repeal section 407 would impinge upon the estate definition of section 541 and render the exemptions of section 522 moot and meaningless. The Court of Appeals for the Eleventh Circuit has accepted this argument. “A narrow implied limitation of section 407 appears to be the only way to effectuate the operation of a Chapter 13 plan for an individual whose regular income consists of social security benefits.” United States v. Devall, 704 F.2d 1513, 1518 (11th Cir.1983).
We think this states matters too broadly. Retaining section 407 in Chapter 13 cases limits the chapter’s override of anti-assignment provisions, 11 U.S.C. § 541(c)(1), to those statutes specified elsewhere in the 1978 Act. And while our reading of the Code also suggests that sections 522(b)(2)(A) and 522(d)(10) are hortatory reaffirmations of the uncontested fact that social security payments only become part of a debtor’s estate if he chooses to include them, such a construction hardly presents the kind of “positive repugnancy” between sections 407 and Chapter 13 that must exist for a court to declare a repeal by implication. Tennessee Valley Authority v. Hill, supra, 437 U.S. at 190, 98 S.Ct. at 2299, quoting Wood v. United States, 41 U.S. (16 Pet.) 342, 363, 10 L.Ed. 987 (1842). Rather, it leaves unimpaired Congress’ desire to open Chapter 13 to social security recipients whose income is “sufficiently stable and regular” to enable them to make regular payments. 11 U.S.C. § 101(24). As a practical matter, a willing debtor can simply sign his check over to the trustee. This averts burdensome administrative problems for the government, permits a needy debtor to retain the funds if they prove necessary for his or her immediate survival, prevents social security funds from being consumed by attorney fees, and obviates the need for intrusion on the important protection of social security benefits from attachment and garnishment.
Turning to the second possible basis for repeal by implication, it cannot fairly be said that “the later act covers the whole subject of the earlier one and is clearly intended as a substitute ...” The district court accepted the trustee’s contention that the new Code constitutes a “specific” statement concerning the rights of debtor social security recipients that overrode the more “general” section 407. Such an analysis misstates the nature of the conflict between the two statutes. This exercise in statutory construction concerns the validity of an attempt to assign social security benefits. The 1935 Act is addressed wholly to the topic of social security benefits and through section 407 specifically prevents judicial intrusion into the benefit payment process. The Bankruptcy Reform Act, on the other hand, addresses the rights and duties of debtors and creditors and addresses social security beneficiaries only to invite them to voluntarily participate in the Chapter 13 system. In no way does Chapter 13 cover the “whole subject” of the Social Security Act.
Indeed, the committees concerned with the Social Security system — the House Ways and Means and Senate Finance panels — played no part in drafting the new Code. The respective Judiciary Committees, on the other hand, possess no jurisdiction over social security and never seriously confronted the issue of benefit assignment. Thus the legislation they produced cannot reverse repeated expressions of congressional opposition to benefit garnishment. Consequently, the present legislative morass resembles the one untangled in Tennessee Valley Authority v. Hill, supra, 437 U.S. at 191-92, 98 S.Ct. at 2300. There the Court ruled that expenditure bills originating in the Appropriations Committees that contained funding for the Tellico Dam did not repeal by implication a provision of the Endangered Species Act that forbade construction of the dam because it would exterminate the “snail darter.” Cryptic hints from the bankruptcy code-writing committees are no better a basis for repealing the welfare provision at issue here.
Finally, even if we read sections 522(b)(2)(A), 522(d)(10) and 541(c)(1) as expressing a policy of limiting anti-assignment provisions, the contrary message con *1087 veyed by the failure to include section 407 on the list of statutes repealed or modified by the Code precludes us from any finding that Congress’ intention was “clear and manifest.” United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939). The omission of section 407 from that list is all but prima facie proof that its repeal was not intended. As the Supreme Court wrote in Sinclair Refining Company v. Atkinson, supra, 370 U.S. at 209-10, 82 S.Ct. at 1336:
... The question of whether existing statutes should be continued in force or repealed is, under our system of government, one which is wholly within the domain of Congress. When the repeal of a highly significant law is urged upon that body and that repeal is rejected after careful consideration and discussion, the normal expectation is that courts will be faithful to their trust and abide by that decision.
While the debate and discussion here was negligible, Congress made clear that it understood how the new Code would affect prior legislation when it assembled its list of voided or altered statutes. Nothing in the legislative history convinces us that the decision to omit section 407 from that list was inadvertent rather than deliberate.
Presented with no compelling indications that Congress intended to repeal section 407, “we have no power to change deliberate choices of legislative policy that Congress has made within its constitutional powers.” Sinclair Refining Company v. Atkinson, supra, 370 U.S. at 215, 82 S.Ct. at 1339.
IV. SUBSEQUENT LEGISLATION
Having failed in 1978 to explicitly state its desire to repeal section 407 in Chapter 13 cases, Congress last year forthrightly declared its wish that the anti-assignment provision not be considered repealed. Pub.L. No. 98-21, § 335, 97 Stat. 65, enacted April 20, 1983, recodified section 407 as section 407(a) and added a new subsection 407(b), which provides:
(b) No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supercede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.
Pub.L. No. 98-21, § 335(a).
The legislative history indicates without question that Congress intended to reverse decisions like those on appeal here. The Conference Report notes:
Based on the legislative history of the Bankruptcy Reform Act of 1978, some bankruptcy courts have considered social security and SSI benefits listed by the debtor to be income for purposes of a Chapter XIII bankruptcy and have ordered SSA in several hundred cases to send all or a part of a debtor’s benefit check to the trustee in bankruptcy.
* * * * * *
Section 407(b) specifically provides that social security and SSI benefits may not be assigned notwithstanding any other provision of law, including P.L. 95-598, the “Bankruptcy Reform Act of 1978”.
While the provision is effective on enactment and is not to be applied retroactively, Pub.L. 98-21, § 335(c), its language buttresses the Court’s conclusion in this case. “Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction.” Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). Section 407(b) thus strongly indicates that Chapter 13 was never intended to allow bankruptcy courts to compel the Administration to pay debtor’s social security benefits directly to the trustee. See Williams v. United States, 711 F.2d 1067 (9th Cir.1983) (vacating deduction order and remanding case to bankruptcy court in light of amendment).
The decision of the district court is Reversed. The bankruptcy court is directed to vacate the income deduction orders.

. Act of July 1, 1898, ch. 541, § 606 (amended 1938, 1950, 1959), formerly codified at 11 U.S.C. § 1006(8) (repealed 1978).

. The Administration does not dispute that the Code nullifies any possible claim of sovereign immunity. 11 U.S.C. § 1325(b) permits the bankruptcy court “to order any entity from which the debtor receives income to pay all or part of such income to the trustee.” The United States and its agencies and instrumentalities are entities. 11 U.S.C. §§ 101(14) and 101(21). The bankruptcy courts, which possess “exclusive jurisdiction of all the property, wherever located, of the debtor,” 28 U.S.C. § 1471(e), “may issue any order, process, or judgment *1083 that is necessary or appropriate to carry out the provisions of this Title.” 11 U.S.C. § 105(a).

. During a committee hearing on Chapter 13 reform the following dialogue took place concerning the anti-assignment provision of the Employees Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1056(d)(1):
SENATOR BURDICK. What provision would you recommend to reconcile the provisions of the Employees Retirement Security Act of 1974 with section 4-503(c)(6) of the Commission’s bill and 4-503(e)(5) of the judge’s bill?
MR. CREEDON. This I guess has to do with the fact that ERISA provides that a pension benefit is not assignable and the Commission’s bill would permit an exemption only with respect to that portion of the pension that is necessary for the bankrupt’s maintenance.
I guess something could be put in the Bankruptcy Act to the effect that notwithstanding the provision in ERISA or otherwise, the trustee will be able to get at the excess.
Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess. 678 (1975) (statement of John J. Creedon, American Life Insurance Association).

. The list is identical in the House and Senate Reports:
—Foreign Service Retirement and Disability payments, 22 U.S.C. 1104;

—Social security payments, 42 U.S.C. 407;

—Injury or death compensation payments from war risk hazards, 42 U.S.C. 1717;
—Wages of fishermen, seamen, and apprentices, 46 U.S.C. 601;
—Civil service retirement benefits, 5 U.S.C. 729, 2265;
—Longshoremen’s and Harbor Workers’ Compensation Act death and disability benefits, 33 U.S.C. 916;
—Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L);
—Veteran’s benefits, 45 U.S.C. 352(E);
—Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and
—Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175.
House Report at 360; Senate Report at 75, U.S.Code Cong. & Admin.News 1978, pp. 5861, 6316. (Emphasis added.)

. Act of July 1, 1898, ch. 541, § 6, 30 Stat. 548 (amended 1938), formerly codified at 11 U.S.C. § 24 (repealed 1978); see also 3 Collier on Bankruptcy ¶ 522.02 (15th ed. 1979 & Supp. 1983). In addition, the House Report at 360 states that section 522(b) “tracks current law”, while the Senate Report at 75 deems section 522(b) an innovation only in that
... It permits an individual debtor in a bankruptcy case a choice between exemption systems. The debtor may choose the Federal exemptions prescribed in subsection (d), or *1084 he may choose the exemptions to which he is entitled under other Federal law and the law of the State of his domicile....

. The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or posi-five previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all.
T. Sedgewick, Interpretation and Construction of Statutory and Constitutional Law 98 (2d ed 1874).