LAURENS FEDERAL SAVINGS & LOAN ASSN. *v.*
SOUTH CAROLINA TAX COMMISSION ET AL.

No. 126. Argued March 2, 1961.—Decided March 20, 1961.

*Frank K. Sloan* argued the cause for petitioner. With him on the brief was *Ernest L. Folk III.*

*James M. Windham,* Assistant Attorney General of South Carolina, argued the cause for respondents. With him on the briefs were *Daniel R. McLeod,* Attorney General, and *Wm. H. Smith, Jr.,* Assistant Attorney General.

*Solicitor General Rankin, Assistant Attorney General Rice, I. Henry Kutz, James P. Turner, Myron C. Baum* and *William Massar* filed briefs for the United States, as *amicus curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The question presented is whether the State of South Carolina has power to require a Federal Savings and Loan Association located in that State to pay documentary stamp taxes on promissory notes executed by the Association in favor of a Federal Home Loan Bank to cover loans from the Bank to the Association.

Petitioner is a Federal Savings and Loan Association organized under the Home Owners' Loan Act of 1933[1] and doing business in Laurens, South Carolina. It is also a member, with borrowing privileges, of the Federal Home Loan Bank of Greensboro, North Carolina, which was established under the Federal Home Loan Bank Act of 1932.[2] For the purpose of making mortgage money available in the community which it serves, petitioner Federal Savings and Loan Association has since August 12, 1953, secured "advances," or loans, from the Federal Home Loan Bank of Greensboro totalling $5,675,000, for which petitioner executed written promissory notes to the Bank as required by the 1932 Act. The State assessed against petitioner documentary stamp taxes on these notes of $2,270 under a state statute imposing a stamp tax on promissory notes at the rate of four cents on each $100.[3] Petitioner paid these taxes under protest and then brought the present action in the state court for refund of the payment,[4] claiming that the imposition of the taxes constituted an unlawful attempt by the State to tax the "advances" of the Federal Home Loan Bank of Greensboro in violation of the provision of the 1932

---

[1] 48 Stat. 128, 12 U. S. C. §§ 1461–1468.

[2] 47 Stat. 725, 12 U. S. C. §§ 1421–1449.

[3] Code of Laws of South Carolina, § 65–688 (1952).

[4] Such suits are authorized by Code of Laws of South Carolina, § 65–2662 (1952).

Act exempting such banks from state taxation. This provision states, in pertinent part: ,

"The bank, including its franchise, its capital, reserves, and surplus, *its advances,* and its income, shall be exempt from all taxation now or hereafter imposed by the United States . . . or *by any State* . . . ." 12 U. S. C. § 1433. (Emphasis supplied.)

The Supreme Court of South Carolina affirmed the judgment upholding the State's taxing power, basing its affirmance on two grounds.[5] It was of the opinion, first, that the exemption provision of the 1932 Act, although completely exempting the loans of the Federal Home Loan Bank from state taxation, did not cover the stamp taxes on the promissory notes securing the loans because these taxes were imposed upon the borrowing Savings and Loan Association rather than upon the lending Home Loan Bank and for this reason should not be considered taxes on the Bank's loans within the meaning of the 1932 provision. Secondly, the state court held that regardless of the original scope of the 1932 exemption, that exemption was implicitly repealed as to transactions like this one by the taxation provision of the Home Owners' Loan Act of 1933. We granted certiorari in order to determine whether the State has imposed a tax forbidden by Congress.[6]

The first question is whether the immunity granted "advances" of the Federal Home Loan Bank by the 1932 Act is broad enough to bar state stamp taxes on this loan transaction. We decided a very similar question in *Pittman* v. *Home Owners' Loan Corp.,* 308 U. S. 21. There the State of Maryland imposed a stamp tax upon the

[5] 236 S. C. 2, 112 S. E. 2d 716.
[6] 364 U. S. 812.

recording of mortgages at the rate of 10 cents for each
$100 of the principal amount of the mortgage indebted-
ness. The Home Owners' Loan Corporation sought to
record a mortgage upon payment of the ordinary record-
ing fee without payment of the additional state stamp
tax. The mortgage had been issued to it as security for
a loan which the Corporation had made under now
defunct provisions of the Home Owners' Loan Act of
1933. Section 4 (c) of that Act provided that "[t]he
Corporation, including . . . its loans" shall be exempt
"from all taxation . . . now or hereafter imposed . . .
by any State" except for real estate taxes. We unani-
mously affirmed the holding of the state court that this
exemption provision, practically identical in language
and substance to the exemption in 12 U. S. C. § 1433,
precluded application of the recording tax to mortgages
securing loans from the Corporation.

The state court in the present case, although drawing
no distinction between the terms "loans" and "advances,"
nevertheless thought the *Pittman* decision inapplicable
here because in that case the mortgage was presented for
recording by the exempt lender itself (the Home Owners'
Loan Corporation) while here the South Carolina tax
was assessed against the borrowing petitioner association
rather than against the exempt lender (the Home Loan
Bank). We distinctly said in *Pittman,* however, that
the fact that the state taxing statute did not require pay-
ment of the tax by the lender has "no determining signifi-
cance," our reason being that " 'whoever pays it it is a
tax upon the mortgage and that is what is forbidden by
the law of the United States.' " [7] We went on in *Pitt-
man* to recognize that the real question was whether the

_____

[7] 308 U. S., at 31, citing *Federal Land Bank* v. *Crosland,* 261 U. S.
374, 378–379.

"critical term . . . 'loans' . . . should be construed as covering the entire process of lending, the debts which result therefrom and the mortgages given . . . as security." [8] The question here is the same as to the synonymous term "advances" [9] and as to the promissory notes securing the advances, since the language of the exemption is equally broad. The factors given weight in the *Pittman* opinion in deciding that the exemption covered the entire loan transaction are also present here. The Act under consideration there required that the loans "be secured by a duly recorded home mortgage" just as here the Act requires the advances to be secured by the note or obligation of the borrower. Here, as we said in *Pittman,* therefore, the documents sought to be taxed "were indispensable elements in the lending operations authorized by Congress" [10] and were required for the protection of the lending institution. The tax in *Pittman* was "graded according to the amount of the loan" [11] and here too the face value of the notes is the measure of the tax.

While the question of the breadth of the exemption of "advances" in the 1932 Act thus is persuasively answered by our reasoning in *Pittman,* the same conclusion is called for by the language and legislative history of that Act as a whole. It set up a system of federally chartered

[8] 308 U. S., at 31.

[9] The fact that the term used throughout the 1932 Act with reference to these transactions is "advances" rather than "loans" is not a significant distinction from *Pittman* but merely represents a congressional choice between synonyms, as was indicated by Senator Reed in introducing on the Senate floor the amendment which added the word "advances" to the exemption provision:

"MR. REED. We should not, of course, put the *loans* of this new bank in the position of being taxable in the several States." 75 Cong. Rec. 14659. (Emphasis supplied.)

[10] 308 U. S., at 32.

[11] 308 U. S., at 31.

Home Loan Banks for the purpose, as stated in the House and Senate Committee Reports, of placing "long-term funds in the hands of local institutions" in order to alleviate the pressing need of home owners for "low-cost, long-term, installment mortgage money" and to "decrease costs of mortgage money" with a "resulting benefit to home ownership in the form of lower costs and more liberal loans." [12] It is to this end that the Act authorizes the Federal Home Loan Banks to make "advances" of funds to eligible borrower institutions "upon the note or obligation" of the borrower secured primarily by mortgages on homes.[13] The exemption of these "advances" from taxation obviously is in keeping with the Act's overall policy of making these mortgage funds available at low cost to home owners. Regardless of who pays the documentary stamp taxes here at issue, the necessary effect of the taxes is to increase the cost of obtaining the advances of funds from the Home Loan Bank to be used in making loans to home owners. In its impact, therefore, this tax, whether nominally imposed on the Bank or on the petitioner, is bound to increase the cost of loans to home owners and thus contravene the basic purpose of Congress in insulating these advances from state taxation. We hold that it was error to construe the exemption provision of the 1932 Act as not broad enough to bar imposition of the State's stamp taxes on the notes which were an integral part of these loan transactions.

This leaves for consideration the state court's holding that, in instances where the borrower is a Federal Savings and Loan Association such as petitioner, the exemption conferred upon the entire loan transaction by the 1932 Act was impliedly repealed by the taxation provision in

---

[12] H. R. Rep. No. 1418, 72d Cong., 1st Sess., pp. 8–10; S. Rep. No. 837, 72d Cong., 1st Sess., pp. 9–11.

[13] 12 U. S. C. §§ 1429–1430b.

the Home Owners' Loan Act of 1933. The court based this holding upon the following language of the 1933 Act:

". . . [N]o State . . . or local taxing authority shall impose any tax on such associations or their franchise, capital, reserves, surplus, loans, or income greater than that imposed by such authority on other similar local mutual or cooperative thrift and home financing institutions." 12 U. S. C. § 1464 (h).

This provision unequivocally bars discriminatory state taxation of the Federal Savings and Loan Associations. The state court held that this prohibition of discriminatory taxes also impliedly authorizes all nondiscriminatory state taxes imposed on these Federal Associations, thereby to that extent repealing the 1932 exemption. We agree with petitioner, however, that in enacting § 1464 (h) in 1933 Congress did not, either expressly or impliedly, repeal the provision of the 1932 Act which had exempted these loan transactions from state taxation. Clearly there is no express language providing for such repeal, and it is signficant that when other provisions of the 1932 Act were to be superseded by the 1933 Act they were repealed expressly and not by implication.[14] It also would be difficult to think of less apt circumstances for the finding of an implied repeal. These two Acts, both designed to provide home owners with easy credit at low cost, were passed within a year of each other on the basis of the same hearings and when read together form a consistent scheme in which the 1932 exemption provision contributes to the major purpose of low-cost credit precisely as it did before passage of the 1933 Act. Nor is there even an intimation in the legislative history of the 1933 Act of any intention to reduce the scope of the exempt status of Home Loan Banks. Indeed, the only

[14] See 48 Stat. 129; H. R. Rep. No. 55, 73d Cong., 1st Sess., p. 1; S. Rep. No. 91, 73d Cong., 1st Sess., p. 1.

comment that would seem to have any bearing on the matter is the statement in the House and Senate Committee Reports that the 1933 Act was to provide new means of "direct relief to home owners" without "otherwise disturb[ing] the functioning of the Federal home-loan bank system." [15] Moreover, a construction of the 1933 Act to permit state taxation of these loan transactions when the borrower is a Federal Savings and Loan Association would bring about an incongruous result. The States would still be barred by the exemption provision of the 1932 Act from taxing these transactions when the borrower is a state-chartered association.[16] To contend that the 1933 Act allows the State to tax Federal Associations on the loan transactions when it is barred by the 1932 Act from similarly taxing state-chartered associations is to urge the very kind of discriminatory taxation which the 1933 Act itself emphatically prohibits. And surely it would be completely unwarranted to construe the 1933 Act, which concerns only Federal Savings and Loan Associations, as eliminating the exemption on Home Loan Bank "advances" when the borrower is a state-chartered institution.

For all these reasons, the more sensible as well as the more natural conclusion is that in the 1933 Act Congress left unimpaired the exemption of these loan transactions from state taxation conferred by the 1932 Act. The judgment of the state court therefore is reversed and the cause remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

---

[15] H. R. Rep. No. 55, 73d Cong., 1st Sess., p. 1; see S. Rep. No. 91, 73d Cong., 1st Sess., p. 1.

[16] The 1932 exemption of Home Loan Bank "advances" obviously does not in any way depend upon the fact that the borrower is a Federal Savings and Loan Association, as is made all the more evident by the fact that such Federal Associations did not come into existence until passage of the 1933 Act.