BELL FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellee.

First District (5th Division)   No. 81—2040

Opinion filed December 30, 1982.

John A. Kelly, Jr., and Richard A. Marsh, both of Schumacher, Jones, Vallely, Kelly & Olson, of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Paul J. Bargiel and Fred H. Montgomery, Special Assistant Attorneys General, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Bell Federal Savings and Loan Association (Bell) claims that Federal law prohibits Illinois from taxing certain funds which Bell received from the Federal Home Loan Bank of Chicago (FHLB) and the Federal Savings and Loan Insurance Corporation (FSLIC). The Department of Revenue disagreed, and Bell filed an action for administrative review. The circuit court entered judgment for the Department, and we hereby affirm.

Bell's appeal presents the following issues of law:

(1) whether the Federal Home Loan Bank Act (12 U.S.C.S. sec. 1421 *et seq.* (1978)) prohibits Illinois from taxing the dividends received by a savings and loan association from the stock it owns in a Federal Home Loan Bank;

(2) whether title IV of the National Housing Act (12 U.S.C.S. sec. 1724 *et seq.* (1978)) prohibits Illinois from taxing the funds which a

savings and loan institution received as a refund of its contributions to the "secondary reserve" of the Federal Savings and Loan Insurance Corporation.

Initially, Bell contends that section 1433 of title 12 of the United States Code (12 U.S.C.S. sec. 1433 (1978)) prohibits Illinois from taxing the dividends which Bell received from the stock it owns in the FHLB of Chicago. Section 1433 provides that, except for real estate taxes, each regional Federal Home Loan Bank, "including its franchise, its capital, reserves, and surplus, its advances, and its income, shall be exempt from all taxation now or hereafter imposed by *** any State ***." 12 U.S.C.S. sec. 1433 (1978).

According to Bell, imposing a State tax on the dividends which a savings and loan association receives from its FHLB stock would impermissibly interfere with FHLB activities which are exempt from State taxation under section 1433. To justify this conclusion Bell relies on *Laurens Federal Savings & Loan Association v. South Carolina Tax Com.* (1961), 365 U.S. 517, 5 L. Ed. 2d 749, 81 S. Ct. 719.

In *Laurens*, the Supreme Court construed the portion of section 1433 which prohibits States from taxing FHLB "advances." As used in section 1433, the term "advances" is synonymous with the word "loan" (365 U.S. 517, 521 n.9, 5 L. Ed. 2d 749, 751 n.9, 81 S. Ct. 719, 721 n.9), and South Carolina attempted to impose a documentary stamp tax on the promissory notes which a savings and loan association must issue as security for an FHLB loan. (See 12 U.S.C.S. sec. 1430(c) (1978).) The Supreme Court—noting that the promissory notes in question were "indispensable elements" of an FHLB loan (365 U.S. 517, 521, 5 L. Ed. 2d 749, 751, 81 S. Ct. 719, 721)—held that the exemption for FHLB "advances" had to be construed as prohibiting States from taxing an activity which is an "integral part" of an FHLB loan transaction. (365 U.S. 517, 522, 5 L. Ed. 2d 749, 752, 81 S. Ct. 719, 722.) And because the taxed transaction was, by statute, an indispensable and integral part of an activity which was exempt under section 1433, it was not significant that the State tax was nominally assessed against a savings and loan association rather than against the FHLB itself. 365 U.S. 517, 522, 5 L. Ed. 2d 749, 752, 81 S. Ct. 719, 721.

Based on its analysis of *Laurens*, Bell argues that State taxation of the dividends paid to a savings and loan association on its FHLB stock impermissibly interferes with the FHLB loan process which is exempt under section 1433.

Using the analysis adopted by the court in *Laurens*, the key question is whether FHLB dividends are an indispensable or integral part

of the exempt "advance" procedure under which the FHLB lends money for use in purchasing homes. In other words, since the FHLB dividends received by savings and loan associations are not expressly exempted from State taxation under section 1433, States are prohibited from taxing these funds only if the process of paying FHLB dividends is an indispensable or integral part of an activity which is exempt under section 1433.

Bell points out that (1) the FHLB charges less interest to borrowing institutions which own FHLB stock; (2) payment of FHLB dividends reduces the need for FHLB loans; and (3) such dividends further the goals of the Federal Home Loan Bank Act by increasing the amount of money available to lending institutions for loans to home buyers. Thus, Bell concludes that taxation of FHLB dividends impermissibly interferes with the exempt "advance" procedure.

■ At most, however, Bell's assertions would justify concluding that there is a remote economic relationship between FHLB advances and FHLB dividends. But we find no support for concluding that FHLB dividends are an indispensable or integral part of the exempt FHLB loan process. Consequently, State taxation of the dividends paid to a savings and loan association on FHLB stock is not prohibited by the section 1433 exemption for FHLB advances.

■ Next, Bell contends that the FHLB dividends paid to savings and loan associations are exempt from State taxation under the portion of section 1433 which prohibits States from taxing the "income" and "surplus" of regional Federal Home Loan Banks. However, Bell fails to recognize that once title to the funds in question passes from the FHLB to FHLB shareholders, these funds no longer constitute the "income" or "surplus" of the FHLB. We find nothing to indicate Congress intended that the funds in question should float through the economy exempt from State taxation merely because, at one time, they constituted the income or surplus of a Federal Home Loan Bank. In short, section 1433 exempts the income and surplus of the FHLB, not the income and surplus of savings and loan associations.

Bell also asserts that congressional intent to exempt FHLB dividends from State taxation can be discerned from the fact that the stock issued by Federal instrumentalities, such as the FHLB, is no longer exempt from *Federal* taxation. (See 31 U.S.C.S. sec. 742a (1979).) But, whether or not FHLB dividends are subject to Federal taxation as a result of section 742a is irrelevant to the present case. Our decision is based on the plain language of section 1433, and neither the legislative history of section 742a, nor administrative interpretations of that provision, changes the unambiguous language of

section 1433.

The second issue presented by this appeal is whether Illinois is precluded from taxing the funds which Bell receives from the Federal Savings and Loan Insurance Corporation as a refund of Bell's *pro rata* share of the FSLIC "secondary reserve."

With certain exceptions which are immaterial to this case, States are prohibited from taxing the principal and interest of "All notes, bonds, debentures, or other such obligations issued by the [Federal Savings and Loan Insurance Corporation]." 12 U.S.C.S. sec. 1725(e) (1978).

The FSLIC is obligated to insure the accounts of Federal savings and loan associations. (12 U.S.C.S. sec. 1726 (1978).) Insured institutions are charged annual premiums (12 U.S.C.S. sec. 1727(b)(1) (1978)) and, at one time, insured institutions were also required to make contributions to the FSLIC "secondary reserve" (12 U.S.C.S. sec. 1727(a)(1) (1978)). But, since 1973, the FSLIC has been obligated, by statute, to make yearly refunds to insured institutions of their *pro rata* shares of the secondary reserve. See 12 U.S.C.S. secs. 1727(d)(B)(ii) and 1727(g) (1978).

Relying on the portion of section 1725(e) which prohibits States from taxing the principal or interest of "All notes, bonds, debentures, or other such obligations issued by the [FSLIC]," Bell argues that the statutory provisions which require the FSLIC to refund the contributions made to its secondary reserve constitute "obligations issued by the corporation."

We are not persuaded by this argument. The exemption established by section 1725(e) only applies to certain obligations which are "issued" by the FSLIC, such as the notes, bonds, and debentures which are "issued" by the FSLIC when they are placed into circulation. Although, in a general sense, the statutory duty to refund the contributions made to the secondary reserve constitutes an "obligation," this is not an obligation which was, in any sense, "issued" by the FSLIC. Instead, this obligation was issued or promulgated by Congress itself.

■ Since the "obligation" to repay contributions to the FSLIC secondary reserve was not "issued" by the FSLIC as contemplated by section 1725(e), Illinois is not prohibited from taxing these funds.

Finally, Bell asserts that the funds which it receives as its *pro rata* share of the secondary reserve are exempt from State taxation under the portion of section 1725(e) which (except for real estate taxation) prohibits States from taxing the FSLIC itself, "including its franchise, capital, reserves, surplus, and income." 12 U.S.C.S. sec.

1725(e) (1978).

This argument is unpersuasive. The funds in question are only exempt when they constitute the "capital, reserves, surplus, and income" of the FSLIC. Once title to these funds passes to Bell, the money is no longer covered by the exemption for funds belonging to the FSLIC. We again find nothing to indicate Congress intended that the money in question should float through the economy exempt from State taxation merely because these funds were exempt when they belonged to a Federal instrumentality.

Based on all the preceding reasons, the judgment of the circuit court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.