BELL FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant,
v. RAYMOND T. WAGNER, JR., Director, Department of Revenue, *et al.*,
Defendants-Appellees.

First District (6th Division)    No. 1—95—0853

Opinion filed December 13, 1996.

Kelly, Olson, Michod, Rogan & Siepker, of Chicago (Charles L. Michod, Jr., and Jill A. Dougherty, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

This case comes to us on cross-motions for summary judgment. The sole issue presented is whether interest paid by the Federal Home Loan Bank of Chicago (FHLB) to its depositors on daily investment deposit accounts is exempt from state taxation. The circuit court determined that interest on such accounts is not exempt. We affirm.

Plaintiff, Bell Federal Savings and Loan Association (Bell), brought an action to recover money paid under protest to the Illinois Department of Revenue (the Department). Bell earns interest on a deposit account with the FHLB, known as a daily investment deposit account or "DID account." Bell paid taxes under protest on the interest earned on this account for a three-month period in 1992 to the Department, and filed a complaint for injunction and declaratory relief asking the circuit court to declare that Bell is entitled to a refund of the tax and any penalties incurred. The court found that the Federal Home Loan Bank Act of 1932 (the Act) (12 U.S.C. §§ 1421 through 1449 (1994)) does not preclude the State of Illinois from taxing the interest earned by Bell on this account. The circuit court therefore granted the defendants' motion for summary judgment and denied Bell's motion for summary judgment.

A motion for summary judgment may be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994); *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). *Maywood Proviso State Bank v. York State Bank & Trust Co.*, 252 Ill. App. 3d 164, 171, 625 N.E.2d 83, 86 (1993). When all parties move for summary judgment, the court is invited to decide the issues thus presented as a matter of law, and entry of summary judgment for one party or the other is proper. *Maywood Proviso*, 252 Ill. App. 3d at 171. Where facts are undisputed and the court's decision rests on the proper interpretation of a statute, we review the circuit court's ruling *de novo*.

*Kaszubowski v. Board of Education*, 248 Ill. App. 3d 451, 456, 618 N.E.2d 609, 613 (1993).

■ At issue is the proper interpretation of section 1433 of the Act, which states in pertinent part:

> "Any and all notes, debentures, bonds, and other such obligations issued by any bank, and consolidated Federal Home Loan Bank bonds and debentures, shall be exempt both as to principal and interest from all taxation ***." 12 U.S.C. § 1433 (1994).

Bell argues that its DID account falls within the "other such obligations" language of the Act.

To support its motion for summary judgment, Bell attached the affidavit of John C. Savio, senior vice-president and chief financial officer of Bell. Savio stated its DID account with the FHLB is "operated very similar to a commercial checking account." Savio also stated that the FHLB uses the DID deposits in furtherance of its purpose of making available low-cost funds for home mortgages. In the memorandum accompanying its motion for summary judgment, Bell argued that DID accounts fit within the catch-all statutory language of the Act, in that, although admittedly not "notes," "debentures" or "bonds," DID accounts are "other such obligations" of the FHLB. Bell also argued that allowing the state to tax the interest on the DID account interferes with "the essential purpose" of the Act.

The defendants' motion for summary judgment contended that Bell's DID account does not constitute an "obligation" within the meaning of section 1433 and that the DID account interest is subject to taxation in Illinois. The defendants relied on *First Federal Savings & Loan Ass'n v. Oklahoma Tax Comm'n*, 743 P.2d 640 (Okla. 1987), where the Oklahoma Supreme Court held that the interest earned on an account similar to that maintained by Bell was not exempt from state taxation. The defendants also argued that there are no substantive similarities between the DID account and notes, bonds, and debentures. Additionally, the defendants argued that DID accounts are not "issued" within the meaning of section 1433.

Before addressing the arguments raised, it is helpful to set out some background. The Federal Home Loan Bank system was created by the Federal Home Loan Bank Act of 1932. 12 U.S.C. §§ 1421 through 1449 (1994). There are 12 regional banks in the system, which was created by Congress to provide a reliable source of funds to homebuyers. *Fidelity Financial Corp. v. Federal Home Loan Bank*, 792 F.2d 1432, 1434 (9th Cir. 1986). The FHLB is owned by its member banks, which are required by law to purchase stock in the FHLB. 12 U.S.C. § 1426 (1994). The FHLB "is a federal instrumentality organized to carry out public policy and its functions are wholly

governmental." *Fahey v. O'Melveny & Myers*, 200 F.2d 420, 446 (9th Cir. 1952). Each FHLB is authorized under the Act to make secured advances to its member banks. 12 U.S.C. § 1430 (1994). Long-term advances, however, may be made only for the purpose of providing funds for residential housing finance. Each FHLB has the power to borrow and give security and to pay interest thereon and to issue debentures, bonds, or other obligations. 12 U.S.C. § 1431 (1994). Consolidated debentures and consolidated bonds, which are the joint and several obligations of all the Federal Home Loan Banks, may also be issued. 12 U.S.C. §§ 1431(b), (c) (1994).

Of particular relevance to this case is that each FHLB has the power to accept deposits made by member banks. 12 U.S.C. § 1431(e) (1994). The FHLBs may be authorized to be drawees of and to engage in or be agents or intermediaries for, or otherwise participate or assist in the collection settlement of (including presentment, clearing, and payment of, and remitting for) checks, drafts, or any other negotiable or nonnegotiable items or instruments of payment drawn on or issued by members of any FHLB. 12 U.S.C. § 1431(e)(2)(A) (1994).

After reviewing both the language of the Act and its history, we conclude that the circuit court correctly rejected Bell's claim that the interest income it receives from the FHLB on its DID account is exempt from state taxation. Section 201 of the Illinois Income Tax Act imposes a tax measured by net income on every individual, corporation, trust, and estate for each taxable year on the privilege of earning or receiving income in or as a resident of Illinois. 35 ILCS 5/201 (West 1994). Although the Illinois Income Tax Act allows for a deduction from taxable income on amounts that are exempt from taxation under statutes of the United States (35 ILCS 5/203(b)(2)(J) (West 1994)), we find the interest earned by Bell on its daily investment deposit account not to fall within this federal exemption.

■ The primary rule of statutory construction, to which all other rules are subordinate, is that a court should ascertain and give effect to the intent of the legislature. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397, 634 N.E.2d 712 (1994). In interpreting a statute, the language used by the legislature must be given its plain and ordinary meaning. In this case, however, the words "other such obligations" cannot be plainly understood outside the context in which they are used. See, *e.g., People v. Britz*, 174 Ill. 2d 163, 197 (1996) (statutory reference to "other medications under medical directions" cannot be plainly understood). We must therefore turn to the doctrine of *ejusdem generis*, which provides that a specific provision, when followed by a general provision, is read to control the general when both relate to the same subject matter. *Britz*, 174 Ill. 2d at 197.

Moreover, a class of unarticulated persons or things referred to in legislation is interpreted as those "others such like" the named persons or things. *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton*, 105 Ill. 2d 389, 396, 475 N.E.2d 536 (1985); *Farley v. Marion Power Shovel Co.*, 60 Ill. 2d 432, 436, 328 N.E.2d 318 (1975).

With this principle in mind, we look to the specific instruments enumerated by Congress that are intended to generate tax-free income: notes, debentures and bonds.

■ A "note" is defined as an "instrument containing an express and absolute promise of signer (*i.e.* maker) to pay to a specified person or order, or bearer, a definite sum of money at a specified time." Black's Law Dictionary 1060 (6th ed. 1990). A "debenture" is defined as a "[l]ong term unsecured debt instrument, issued pursuant to an indenture. A promissory note or bond backed by the general credit and earning history of a corporation and usually not secured by a mortgage or lien on any specific property; *e.g.*, an unsecured bond." Black's Law Dictionary 401 (6th ed. 1990). A "bond" is defined as a "certificate or evidence of a debt on which the issuing company or governmental body promises to pay the bondholders a specific amount of interest for a specified length of time, and to repay the loan on the expiration date. A long-term debt instrument that promises to pay the lender a series of periodic interest payments in addition to returning the principle at maturity." Black's Law Dictionary 178 (6th ed. 1990).

■ According to Bell, its DID account is "very similar to a commercial checking account." A bank checking account, however, is nothing more than a sum of money deposited with a bank and subject to be drawn out by the customer's check. The Uniform Commercial Code defines the term "account" as "any deposit or credit account with a bank, including a demand, time, savings, passbook, share draft, or like account, other than an account evidenced by a certificate of deposit." 810 ILCS 5/4—104(a)(1) (West 1994). A bank deposit is defined as "[c]ash, checks, or drafts placed with [a] bank for credit to the depositor's account. Placement of money in a bank thereby creating a contract between the bank and [the] depositor." Black's Law Dictionary 145 (6th ed. 1990).

■ Bell's DID account does not share characteristics in common with those debt instruments explicitly exempted from taxation by Congress. First and foremost, Bell's DID account is not an "instrument." As a type of bank account, the DID account is merely a "sum of money placed with [the FHLB] on deposit" (Black's Law Dictionary 144 (6th ed. 1990)), and subject to be drawn out by Bell at will.

An "instrument," on the other hand, is "[a] writing executed and delivered as the evidence of an act or agreement." Black's Law Dictionary 801 (6th ed. 1990).

Moreover, notes, debentures and bonds all refer to debt instruments that include, in general, promises to pay specified amounts at specified times. The DID account, although bearing interest, is not a debt instrument issued by the FHLB. The money in the DID account is available to Bell on demand, which is in contrast to the promise to pay at specified times inherent in the debt instruments that qualify for the tax exemption. Another distinguishing feature is the fact that when the FHLB issues notes, debentures, and bonds, only it as the payor can consent to an increase in the amount borrowed. With these instruments, therefore, the FHLB has direct control over the amount of its indebtedness. With the DID account, on the other hand, it is Bell and other DID depositors which control the amount of Bell's obligation.

The structure of the Act also supports our analysis. Under the Act, the FHLB has the power to borrow money by "issu[ing] debentures, bonds, or other obligations upon such terms and conditions as the Board may approve." 12 U.S.C. § 1431(a) (1994). Consolidated debentures may be issued "in order to provide funds for any such bank or banks." 12 U.S.C. § 1431(b) (1994). In contrast to the explicit power of the FHLB to borrow money by issuing obligations in order to carry out the provisions of the Act, the FHLB is also given the power to accept deposits of member banks and assist in the collection and settlement of checks, drafts, or other items drawn on or issued by member banks. 12 U.S.C. § 1431(e) (1994). Thus, in drafting the Act, Congress distinguished between the power of the FHLB to borrow money in order to carry out its purpose by issuing debt obligations and the ability of the FHLB to provide a service to its member banks by accepting deposits.

Furthermore, Bell concedes that if its DID account interest is to be exempted from state taxation, the interest must accrue as a result of some instrument "issued" by the FHLB. Section 1433 explicitly requires this. In order to accommodate this statutory requirement, Bell argues that an "issuance" occurs in the context of its DID account because "credits" are "issued" to its account by the FHLB when a deposit is made. It also contends that the existence of an issuance is evidenced by the FHLB's "physical delivery of the DID account statements."

A similar argument was rejected by this court in *Bell Federal Savings & Loan Ass'n v. Department of Revenue*, 111 Ill. App. 3d 890, 444 N.E.2d 798 (1982). There, the court denied Bell's claim of state

tax exemption for its FHLB stock dividends and the refund of its *pro rata* share of the Federal Savings and Loan Insurance Corporation (FSLIC) secondary reserve. The pertinent provision of the National Housing Act, which pertained to the FSLIC issue, provided that states were prohibited from taxing the principal and interest of "[a]ll notes, bonds, debentures, or other such obligations issued by the [FSLIC]." 12 U.S.C. § 1725(e) (1988) (repealed 1989). Bell argued that the statutory provisions requiring the FSLIC to refund the contributions made to the secondary reserve constituted "obligations issued by" the FSLIC. *Bell Federal*, 111 Ill. App. 3d at 894.

The appellate court was not persuaded by Bell's argument. It found that the exemption applied only to certain obligations that "are 'issued' by the FSLIC when they are placed into circulation" and did not apply to the statutory duty to refund the contributions, which was not, in any sense, "issued." *Bell Federal*, 111 Ill. App. 3d at 894.

Finally, we agree with the Oklahoma Supreme Court's holding in *First Federal Savings & Loan Ass'n v. Oklahoma Tax Comm'n*, 743 P.2d 640 (Okla. 1987). There, on similar facts, the court upheld the Oklahoma Tax Commission's assessment of corporate income tax on the interest earned by a savings and loan association from overnight demand deposits. The court agreed with the Oklahoma Tax Commission that the interest earned on the deposits was not a federal obligation under section 1433. *First Federal*, 743 P.2d at 645-46. The *First Federal* court noted that the word "obligations" could be interpreted to "embrace virtually everything which a bank is bound to pay." 743 P.2d at 645. The court also cited the "settled rule" of statutory construction that tax exemptions are not to be inferred lightly and that tax exemptions will not apply unless they are already granted by statute. *First Federal*, 743 P.2d at 645. The court found that Congress, by using the term "issued," meant for the exempt obligations to refer to "those which might be issued in the exercise of the borrowing power of the United States." *First Federal*, 743 P.2d at 645. Thus, the court concluded that overnight demand deposits are subject to taxation by the State of Oklahoma.

Bell attempts to discount the value of the *First Federal* decision by arguing that the court's reasoning was flawed. In particular, Bell faults the *First Federal* court's reliance on *Hibernia Savings & Loan Society v. San Francisco*, 200 U.S. 310, 50 L. Ed. 495, 26 S. Ct. 265 (1906), a case that Bell claims has questionable validity in light of the Supreme Court's decision in *American Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 77 L. Ed. 2d 1072, 103 S. Ct. 3369 (1983).

We find the *First Federal* court's citation to the *Hibernia* decision

to have been proper. In *Hibernia*, the Court found that checks issued by the United States Treasurer for interest accrued on certain bonds were subject to state taxation. The Court found that the checks, although technically "obligations" of the United States, were not within the spirit of the statutory exemption. *Hibernia*, 200 U.S. at 316, 50 L. Ed. at 497, 26 S. Ct. at 267. The Court reasoned that, because the checks were payable immediately, they were for all practical purposes "the money itself." *Hibernia*, 200 U.S. at 315, 50 L. Ed. at 497, 26 S. Ct. at 267. While, as noted by Bell, the statute upon which the *Hibernia* Court relied has been amended as discussed in *American Bank & Trust*, the teaching of the Court regarding the meaning of "obligations" is still valid. See *Rockford Life Insurance v. Illinois Department of Revenue*, 482 U.S. 182, 190-91, 96 L. Ed. 2d 152, 160-61, 107 S. Ct. 2312, 2316-17 (1987) (the Court, four years after deciding *American Bank & Trust*, cited to *Hibernia* when discussing the purpose behind the governmental tax immunity doctrine). Bell's criticism of the *First Federal* court's use of the *Hibernia* decision is unwarranted.

Bell also argues that taxing the interest on its DID account interferes with an essential purpose of the FHLB. According to Bell's argument, DID accounts are an indispensable and integral part of the FHLB's ability to make available low-cost funds for home mortgages and, without such deposits, "the FHLB would have to secure higher-cost funds from elsewhere, such as the issuance of bonds."

Bell's analysis is not relevant to its claim that the tax on its interest income violated the Act. An examination of whether a tax would interfere with a governmental purpose is relevant only in the context of a claim under the constitutional doctrine of intergovernmental tax immunity, which is based on the proposition that "the borrowing power is an essential aspect of the Federal Government's authority and, just as the Supremacy Clause bars the States from directly taxing federal property, it also bars the States from taxing federal obligations in a manner which has an adverse effect on the United States' borrowing ability." *Rockford Life Insurance*, 482 U.S. at 190, 96 L. Ed. 2d at 160, 107 S. Ct. at 2317. Bell has not made such a claim in this case.

For the foregoing reasons, the judgment entered by the trial court is affirmed.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.