SIXTH DIVISION
 FILED: 12-13-96

No. 1-95-0853

 
BELL FEDERAL SAVINGS AND ) Appeal from
LOAN ASSOCIATION ) the Circuit Court
 ) of Cook County.
 Plaintiff-Appellant, ) 
 )
 v. )
 )
RAYMOND T. WAGNER, JR., ) 
Director of the Illinois )
Department of Revenue and ) 
PATRICK QUINN, Treasurer of ) 
the State of Illinois, ) Honorable
 ) Joanne L. Lanigan 
 Defendant-Appellee. ) Judge Presiding.

 JUSTICE ZWICK delivered the opinion of the court:
 This case comes to us on cross-motions for summary judgment.
The sole issue presented is whether interest paid by the Federal
Home Loan Bank of Chicago ("FHLB") to its depositors on daily
investment deposit accounts is exempt from State taxation. The
circuit court determined that interest on such accounts is not
exempt. We affirm.
 Plaintiff, Bell Federal Savings and Loan Association
("Bell"), brought an action to recover money paid under protest
to the Illinois Department of Revenue ("the Department"). Bell
earns interest on a deposit account with the FHLB, known as a
daily investment deposit account or "DID account." Bell paid
taxes under protest on the interest earned on this account for a
three-month period in 1992 to the Department, and filed a
complaint for injunction and declaratory relief asking the
circuit court to declare that Bell is entitled to a refund of the
tax and any penalties incurred. The court found that the Federal
Home Loan Bank Act ("the Act") does not preclude the State of
Illinois from taxing the interest earned by Bell on this account.
The circuit court therefore granted the defendants' motion for
summary judgment, and denied Bell's motion for summary judgment. 
 A motion for summary judgment may be granted when "the
pleadings, depositions and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law." 735 ILCS 5/2-1005 (West 1994); Purtill v.
Hess, 111 Ill.2d 229, 240, 489 N.E.2d 867, 871 (1986). Maywood
Proviso State Bank v.York State Bank & Trust Co., 252 Ill. App.
3d 164, 625 N.E.2d 83, 86 (1993). When all parties move for
summary judgment, the court is invited to decide the issues thus
presented as a matter of law, and entry of summary judgment for
one party or the other is proper. Maywood Proviso, 252 Ill. App.
3d at 171. Where facts are undisputed and the court's decision
rests on the proper interpretation of a statute, we review the
circuit court's ruling de novo. Kaszubowski v. Board of
Education, 248 Ill. App. 3d 451, 618 N.E.2d 609, 613 (1993)
 At issue is the proper interpretation of section 1433 of the
Act which states in pertinent part:
 "Any and all notes, debentures, bonds, and
 other such obligations issued by any bank,
 and consolidated Federal Home Loan Bank bonds
 and debentures, shall be exempt both as to
 principal and interest from all taxation
 ***." 12 USC  1433 (1994).
Bell argues that its DID account falls within the "other such
obligations" language of the Act.
 To support its motion for summary judgment, Bell attached
the affidavit of John C Savio, senior vice president and chief
financial officer of Bell. Savio stated its DID account with the
FHLB is "operated very similar to a commercial checking account."
Savio also stated that the FHLB uses the DID deposits in
furtherance of its purpose of making available low-cost funds for
home mortgages. In the memorandum accompanying its motion for
summary judgment, Bell argued that DID accounts fit within the
catch-all statutory language of the Act, in that, although
admittedly not "notes," "debentures" or "bonds," DID accounts are
"other such obligations" of the FHLB. Bell also argued that
allowing the state to tax the interest on the DID account
interferes with "the essential purpose" of the Act.
 The defendants motion for summary judgment contended that
Bell's DID account does not constitute an "obligation" within the
meaning of section 1433, and that the DID account interest is
subject to taxation in Illinois. The defendants relied on First
Federal Savings and Loan Association of Claremore v. Oklahoma Tax
Commission, 743 P.2d 640 (Okla. 1987), where the Oklahoma Supreme
Court held that the interest earned on an account similar to that
maintained by Bell was not exempt from State taxation. The
defendants also argued that there are no substantive similarities
between the DID account and notes, bonds, and debentures.
Additionally, the defendants argued that DID accounts are not
"issued" within the meaning of section 1433.
 Before addressing the arguments raised, it is helpful to set
out some background. The Federal Home Loan Bank system was
created by the Federal Home Loan Bank Act of 1932. 12 U.S.C. 
1421 - 1449. There are twelve regional FHLBs in the system, which
was created by Congress to provide a reliable source of funds to
homebuyers. Fidelity Financial Corporation v. Federal Home Loan
Bank, 792 F.2d 1432, 1434 (9th Cir. 1986). The FHLB is owned by
its member banks, which are required by law to purchase stock in
the FHLB. 12 U.S.C.  1426. The FHLB "is a federal
instrumentality organized to carry out public policy and its
functions are wholly governmental." Fahey v. O'Melveny & Myers,
200 F.2d 420, 446 (9th Cir. 1952). Each FHLB is authorized under
the Act to make secured advances to its member banks. 12 U.S.C. 
1930. Long-term advances, however, may be made only for the
purpose of providing funds for residential housing finance. Each
FHLB has the power to borrow and give security and to pay
interest thereon and to issue debentures, bonds, or other
obligations. 12 U.S.C.  1431. Consolidated debentures and
consolidated bonds, which are the joint and several obligations
of all the Federal Home Loan Banks, may also be issued. 12 U.S.C.
1431(b) and (c).
 Of particular relevance to this case is that each FHLB has
the power to accept deposits made by member banks. 12 U.S.C. 
1431(e). The FHLBs may be authorized to be drawees of and to
engage in or be agents or intermediaries for, or otherwise
participate or assist in the collection settlement of (including
presentment, clearing, and payment of, and remitting for) checks,
drafts, or any other negotiable or nonnegotiable items or
instruments of payment drawn on or issued by members of any FHLB.
12 U.S.C.  1431(e)(2)(A). 
 After reviewing both the language of the Act and its
history, we conclude that the circuit court correctly rejected
Bell's claim that the interest income it receives from the FHLB
on its DID account is exempt from State taxation. Section 201 of
the Illinois Income Tax Act imposes a tax measured by net income
on every individual, corporation, trust, and estate for each
taxable year on the privilege of earning or receiving income in
or as a resident of Illinois. 35 ILCS 5/201 (1994). Although the
Illinois Income Tax Act allows for a deduction from taxable
income on amounts that are exempt from taxation under statutes of
the United States (35 ILCS 5/203(b)(2)(J)(1994)), we find the
interest earned by Bell on its daily investment deposit account
not to fall within this federal exemption.
 The primary rule of statutory construction, to which all
other rules are subordinate, is that a court should ascertain and
give effect to the intent of the legislature. Bonaguro v. County
Officers Electoral Board, 158 Ill. 2d 391, 397, 634 N.E. 2d 712
(1994). In interpreting a statute, the language used by the
legislature must be given its plain and ordinary meaning. In this
case, however, the words "other such obligations," cannot be
plainly understood outside the context in which they are used.
See e.g., People v. Britz, No. 77618, (Ill. Sup. Ct., Oct. 18,
1996), slip op. at 24 (statutory reference to "other medications
under medical directions" cannot be plainly understood). We must
therefore turn to the doctrine of ejusdem generis, which provides
that a specific provision, when followed by a general provisions,
is read to control the general when both relate to the same
subject matter. Britz, slip op. at 24. Moreover, a class of
unarticulated persons or things referred to in legislation is
interpreted as those "others such like" the named persons or
things. Coldwell Banker Residential Real Estate Services of
Illinois, Inc. v. Clayton, 105 Ill. 2d 389, 396, 475 N.E.2d 536
(1985); Farley v. Marion Power Shovel Co., 60 Ill. 2d 432, 436,
328 N.E.2d 318 (1975). 
 With this principle in mind, we look to the specific
instruments enumerated by Congress which are intended to generate
tax-free income: notes, debentures and bonds.
 A "note" is defined as an "instrument containing an
express and absolute promise of signer (i.e. maker) to pay a
specified person or order, or bearer, a definite sum of money at
a specified time." Black's Law Dictionary 1060 (6th 
ed. 1990). A "debenture" is defined as a "[l]ong-term
unsecured debt instrument, issued pursuant to an indenture. A
promissory note or bond backed by the general credit and
earning history of a corporation and usually not secured by a
mortgage or lien on any specific property; e.g., an unsecured
bond." Black's Law Dictionary 401 (6th ed. 1990). A "bond" is
defined as a "certificate or evidence of a debt on which the
issuing company or governmental body promises to pay the
bondholders a specific amount of interest for a specified length
of time, and to repay the loan on the expiration date. A
long-term debt instrument that promises to pay the lender a
series of periodic interest payments in addition to returning the
principle at maturity." Black's Law Dictionary 178 (6th ed.
1990).
 According to Bell, its DID account is "very similar to a
commercial checking account." A bank checking account, however,
is nothing more than a sum of money deposit with a bank and
subject to be drawn out by the customer's check. The Uniform
Commercial Code defines the term "account" as "any deposit or
credit account with a bank and includes a demand, time, savings,
passbook, share draft, or like account, other than an account
evidenced by a certificate of deposit." 810 ILCS 5/4-104(a)(1)
(1994). A bank deposit is defined as "cash, checks, or drafts
placed with a bank for credit to the depositor's account.
Placement of money in a bank thereby creating a contract between
the bank and the depositor." Black's Law Dictionary at 145. 
 Bell's DID account does not share characteristics in common
with those debt instruments explicitly exempted from taxation by
Congress. First and foremost, Bell's DID account is not an
"instrument." As a type of bank account, the DID account it is
merely a "sum of money placed with [the FHLB] on deposit"
(Black's Law Dictionary 144 (6th ed. 1990)), and subject to be
drawn out by Bell at will. An "instrument," on the other hand, is
"a writing executed and delivered as the evidence of an act or
agreement." Black's Law Dictionary 801 (6th ed. 1990). 
 Moreover, notes, debentures and bonds all refer to debt
instruments that include, in general, promises to pay specified
amounts at specified times. The DID account, although bearing
interest, is not a debt instrument issued by the FHLB. The money
in the DID account is available to Bell on demand, which is in
contrast to the promise to pay at specified times inherent in the
debt instruments that qualify for the tax exemption. Another
distinguishing feature is the fact that when the FHLB issues
notes, debentures, and bonds, only it as the payor can consent to
an increase in the amount borrowed. With these instruments,
therefore, the FHLB has direct control over the amount of its
indebtedness. With the DID account, on the other hand, it is Bell
and other DID depositors which control the amount of Bell's
obligation.
 The structure of the Act also supports our analysis. Under
the Act, the FHLB has the power to borrow money by "issuing
debentures, bonds, or other obligations upon such terms and
conditions as the Board may approve ***." 12 U.S.C.  1431(a).
Consolidated debentures may be issued "in order to provide funds
for any bank or banks ***." 12 U.S.C.  1431(b). In contrast to
the explicit power of the FHLB to borrow money by issuing
obligations in order to carry out the provisions of the Act, the
FHLB is also given the power to accept deposits of member banks
and assist in the collection and settlement of checks, drafts, or
other items drawn on or issued by member banks. 12 U.S.C. 
1431(e). Thus, in drafting the Act, Congress distinguished
between the power of the FHLB to borrow money in order to carry
out its purpose by issuing debt obligations and the ability of
the FHLB to provide a service to its member banks by accepting
deposits.
 Furthermore, Bell concedes that if its DID account interest
is to be exempted from State taxation, the interest must accrue
as a result of some instrument "issued" by the FHLB. Section 1433
explicitly requires this. In order to accommodate this statutory
requirements, Bell argues that an "issuance" occurs in the
context of its DID account because "credits" are "issued" to its
account by the FHLB when a deposit is made. It also contends that
the existence of an issuance is evidenced by the FHLB's "physical
delivery of the DID account statements." 
 A similar argument was rejected by this court in Bell
Federal Savings & Loan Association v. Department of Revenue, 111
Ill. App. 3d 890, 444 N.E.2d 798 (1982). There, the court denied
Bell's claim of State tax exemption for its FHLB stock dividends
and the refund of its pro-rata share of the Federal Savings and
Loan Insurance Corporation ("FSLIC") secondary reserve. The
pertinent provision of the National Housing Act, which pertained
to the FSLIC issue, provided that states were prohibited from
taxing the principle and interest of "[a]ll notes, bonds,
debentures, or other such obligations issued by the [FSLIC]." 12
U.S.C. 1725(e) (repealed 1989). Bell argued that the statutory
provisions requiring the FSLIC to refund the contributions made
to the secondary reserve constituted "obligations issued by" the
FSLIC. Bell Federal, 111 Ill. App. 3d at 894.
 The appellate court was not persuaded by Bell's argument. It
found that the exemption applied only to certain obligations that
"are 'issued' by the FSLIC when they are placed into circulation"
and did not apply to the statutory duty to refund the
contributions, which was not, in any sense, "issued." Bell
Federal, 111 Ill. App. 3d at 894.
 Finally, we agree with the Oklahoma Supreme Court's holding
in First Federal Savings and Loan Association v. Oklahoma Tax
Commission, 743 P.2d 640 (Okla. 1987). There, on similar facts,
the court upheld the Oklahoma Tax Commission's assessment of
corporate income tax on the interest earned by a savings and loan
association from overnight demand deposits. The court agreed with
the Oklahoma Tax Commission that the interest earned on the
deposits was not a federal obligation under section 1433. First
Federal, 743 P.2d at 645-646. The First Federal court noted that
the word "obligations" could be interpreted to "embrace virtually
everything which a bank is bound to pay." 743 P.2d at 645. The
court also cited the "settled rule" of statutory construction
that tax exemptions are not to be inferred lightly and that tax
exemptions will not apply unless they are already granted by
statute. First Federal, 743 P.2d at 645. The court
found that Congress, by using the term "issued," meant for the
exempt obligations to refer to those which might be issued in the
exercise of the borrowing power of the United States." First
Federal, 743 P.2d at 645. Thus, the court concluded that
overnight demand deposits are subject to taxation by the State of
Oklahoma.
 Bell attempts to discount the value of the First Federal
decision by arguing that the court's reasoning was flawed. In
particular, Bell faults the First Federal court's reliance on
Hibernia Savings and Loan Society v. San Francisco, 200 U.S. 310,
26 S. Ct. 265, 50 L. Ed. 495 (1906), a case that Bell claims has
questionable validity in light of the Supreme Court's decision in
American Bank & Trust Co. v. Dallas County, 463 U.S. 855,
77 L. Ed. 2d 1072, 103 S. Ct. 3369 (1983). 
 We find the First Federal court's citation to the Hibernia
decision to have been proper. In Hibernia, the Court found that
checks issued by the United States Treasurer for interest accrued
on certain bonds were subject to state taxation. The Court found
that the checks, although technically "obligations" of the United
States, were not within the spirit of the statutory exemption.
Hibernia, 200 U.S. at 316. The Court reasoned that, because the
checks were payable immediately, they were for all practical
purposes "the money itself." Hibernia, 200 U.S. at 315. While, as
noted by Bell, the statute upon which the Hibernia Court relied
has been amended as discussed in American Bank and Trust, the
teachings of the Court regarding the meaning of "obligations" is
still valid. See Rockford Life Insurance v. Illinois Department
of Revenue, 482 U.S. 182, 190-91, 107 S. Ct. 2312, 96 L. Ed. 2d
152 (1987) (the Court, four years after deciding American Bank
and Trust, cited to Hibernia when discussing the purpose behind
the governmental tax immunity doctrine). Bell's criticism of the
First Federal court's use of the Hibernia decision is
unwarranted. 
 Bell also argues that taxing the interest on its DID account
interferes with an essential purpose of the FHLB. According to
Bell's argument, DID accounts are an indispensable and integral
part of the FHLB's ability to make available low-cost funds for
home mortgages and, without such deposits, "the FHLB would have
to secure higher-cost funds from elsewhere, such as the issuance
of bonds." 
 Bell's analysis is not relevant to its claim that the tax on
its interest income violated the FHLB Act. An examination of
whether a tax would interfere with a governmental purpose is
relevant only in the context of a claim under the constitutional
doctrine of intergovernmental tax immunity, which is based on the
proposition that "the borrowing power is an essential aspect of
the Federal Government's authority and, just as the Supremacy
Clause bars the States from directly taxing federal property, it
also bars the States from taxing federal obligations in a manner
which has an adverse effect on the United States' borrowing
ability." Rockford Life Insurance, 482 U.S. at 190. Bell has not
made such a claim in this case. 
 For the foregoing reasons, the judgment entered by the trial
court is affirmed.
 Affirmed.
 McNAMARA, J. and RAKOWSKI, J., concur.